## W. J. HUBBARD ET AL. *v.* WILLIAM RUTLEDGE.

1. JURORS. *Competency. Challenge. Curing error.*
   The defendant's clerk is an incompetent juror; and his peremptory challenge will not cure the erroneous overruling of objection to him, • if the plaintiff's challenges are exhausted before the panel is completed.

2. LIBEL. *Privileged communication. Relevancy of evidence.*

In a suit by one merchant against another for libel, in writing that the plaintiff burned his store for the insurance money, if the defence is the honest motive, the defendant, who has denied malice, may be cross-examined as to the effect of the plaintiff's business on his.

3. SAME. *Occasion. Information and advice. Justification. Belief.*

In such case, the plaintiff is entitled to recover if the defendant wrote to injure him in business; *aliter*, if, believing on good ground the statement to be true, he wrote in good faith to protect the insurance company.

ERROR to the Circuit Court of Covington County.

Hon. A. G. MAYERS, Judge, having been of counsel, C. C. MILLER acted as judge *pro hac vice.*

This action was brought by W. J. Hubbard and Thomas I. Hubbard, partners under the name of W. J. Hubbard & Bro., against the defendant for a libel, in writing a letter to the Merchants' Insurance Company of New Orleans, to the following effect: The establishment of Hubbard & Bro. at Jaynesville was burned a few days ago, and I hear that they had it insured in your company for three thousand dollars. It is well understood in the neighborhood, and I am confident proof can be made to the effect, that the place was burned by the parties themselves in order to get the insurance money. I heard several men say that they did not think there was more than five hundred dollars worth of goods in the house a few days before it was burned, and it is believed that nearly all the goods were moved before it was fired. I don't think you ought to pay the policy without testing the case, as it is giving rogues too good a chance, and at the same time is prejudicial to persons doing a legitimate business. If such things are allowed, the premiums will be so high in the county that an honest man cannot insure.

The defendant pleaded the general issue, with notice that he would offer evidence to prove that a report, which he had reason to believe, was current in the plaintiffs' neighborhood, that they had burned their store-house; that the insurance company, like himself, was interested in having the rumor investigated; and that the letter was a confidential communication, made with a view to such inquiry, and not in malice.

In impanelling the jury, L. Berry stated on his *voir dire* that he was then, and had been for some time, in the employ of the defendant as clerk ; that he had carried a letter in regard to this suit from the defendant to his counsel, and had frequently heard the case talked about, but had formed no opinion, and could impartially try it. The plaintiffs objected to the juror, and on the overruling of their objection excepted. They then challenged Berry peremptorily, and afterwards exhausted their peremptory challenges before the completion of the panel.

The plaintiffs introduced the letter in evidence, and proved that when one of them went to New Orleans for the insurance money, it was shown to him, and that the refusal of the company to pay caused a rigid examination to be made by its agent, who reported the accusation unfounded, and that thereupon the loss was discharged. The defendant, having proved the existence of the rumor by several witnesses, and testified, under the plaintiffs' objection, to recitals thereof to him by different persons before he wrote, proceeded to state that, although the plaintiffs had ordered him out of their store, where he went to examine their stock, he had no malice, but made the communication that the matter might be investigated. The plaintiffs objected to this evidence, but the objection was overruled. The defendant was then asked by the plaintiffs' counsel if the plaintiffs were not, prior to the letter, taking a good part of the trade he was receiving before they began business. The defendant's counsel objected to the question, and the objection was sustained.

The court charged the jury for the plaintiffs, that the language of the communication, if virulent and abusive, and stronger than the occasion justified, was a circumstance from which malice might be inferred ; that the jury were to judge from the letter, and all the other evidence in the case, whether the defendant wrote and published it with lawful or malicious intentions ; that if he did it maliciously to injure the plaintiffs, it was unnecessary for them to prove actual or special damage, — the law presuming damage without proof, and the jury might assess exemplary damages ; that malice meant ill-will, and the jury were to take the defendant's disclaimer in connection with all the other facts.

For the defendant, the court instructed the jury that the plaintiffs were not on trial for burning their store-house, but that the issue was whether there was a rumor to that effect in their neighborhood, which Rutledge had reason to credit; that it mattered not whether they were guilty, if such was the bruit, and the defendant believing the fact, wrote the letter in good faith and without malice; that every one who believes himself possessed of knowledge, which, if true, may affect another's interests, has the right to disclose his conviction with or without any previous request, and whether he has or has not personally any interest in the subject-matter; that if A. believes that B. is intending to rob C., he has the right to communicate his belief to the latter without waiting for him to inquire on the subject; and B., if injured by such act, is without redress.

The jury found for the defendant; and the plaintiffs, after motion for a new trial, which was overruled, brought up the case.

*J. L. McCaskill,* for the plaintiffs in error.

1. It is the court's duty to see that a fair and impartial jury is impanelled. A juror should be entirely exempt from every influence likely to produce the least bias towards either party, and should have no motive to find a verdict for one or the other save a sense of duty and justice. *Ferriday* v. *Selser,* 4 How. 506; *Childress* v. *Ford,* 10 S. & M. 25; *McGuire* v. *State,* 37 Miss. 369; *Powers* v. *Presgroves,* 38 Miss. 227; *Gilliam* v. *Brown,* 43 Miss. 641. In this case, the plaintiffs, having exhausted their peremptory challenges, were forced to take such jurors as were tendered them, which brings the case within the rule of *Ferriday* v. *Selser, ubi supra.*

2. The court erred in its action on the objections to evidence. Rutledge should not have been allowed to state that he wrote the letter without malice, because that was a matter to be proved by his conduct; and, as the plaintiffs could only prove his motive by his acts, the defendant should have been restricted to the same kind of evidence. Clearly Rutledge should have been compelled to answer the question as to what effect the plaintiffs' business was having on his.

3. Respecting the instructions, the court also erred. When a man goes beyond what is necessary to communicate in-

formation, and indulges in defamatory language not warranted by the facts, the communication becomes slanderous and ceases to be privileged. Cooley on Torts, 205, 215; *Sands* v. *Robison*, 12 S. & M. 704; Addison on Torts, 955, 971; Townshend on Slander and Libel, § 209; Starkie on Slander and Libel, 329, 339. The case is like that of the defendant, who, pretending to investigate a charge of bigamy against the plaintiff, advertised a reward for information of his marriage prior to nine o'clock on a certain day, where the court held that the advertisement exceeded the requirements of the occasion, and was a libel.

*A. J. McLaurin*, on the same side.

*R. H. Thompson*, for the defendant in error.

1. The juror Berry was not incompetent. He was a clerk of the defendant. But that fact alone is too indefinite to determine that the juror would have been biassed in the defendant's favor. The presumption is that, in hearing the case talked about, he heard mere rumors. The plaintiffs who objected should have definitely shown his bias. *State* v. *Flower*, Walker, 318; *State* v. *Johnson*, Walker, 392; *Noe* v. *State*, 4 How. 330; *King* v. *State*, 5 How. 730; *Alfred* v. *State*, 37 Miss. 296; *Ogle* v. *State*, 33 Miss. 383; *Nelms* v. *State*, 13 S. & M. 500. The juror had formed no opinion, and could try the case. Again he was not impanelled. If a fair and impartial jury was obtained, what does it signify that the plaintiffs' peremptory challenges were exhausted? It is not shown that any juror was impanelled whom the plaintiffs would otherwise have challenged.

2. The court was right in its action on the evidence. The defence being that the letter was a confidential communication, the question was, Did the defendant *believe* the communication? The gist of the action, to which he pleaded not guilty, was malice, and it was proper for the defendant to state that he wrote without malice. Townshend on Slander and Libel, § 241. Rutledge's business had nothing to do with the case; the question about the Hubbards taking away his business was irrelevant.

3. There was no error in the instructions. A lawful occasion, in the absence of actual malice, supplies a sufficient justi-

fication. Thus where a clergyman, in his sermon, recited a case out of Fox's Martyrology, that one Greenwood being a perjured person and a great persecutor had plagues inflicted on him, and was killed by the hand of God, Greenwood who had not been so plagued, but was present at that sermon, sued the preacher for calling him a perjured person, and the jury found for the defendant on the ground that he delivered the matter as a story, and not with intent to slander. Cro. J. 91. And the plaintiff who sued one for saying of him that " he heard he was hanged for stealing of an horse " was nonsuited, upon it appearing in evidence that the words were spoken in grief and sorrow for the news. Lev. 82; 1 Vin. Abr. 540; Townshend on Slander and Libel, § 241; Starkie on Slander and Libel, 217, 321; *Bradley* v. *Heath*, 12 Pick. 163.

CAMPBELL, J., delivered the opinion of the court.

The juror, Berry, was not above all exception as a juror, and should have been rejected by the court. He was in the service of the defendant as a clerk, and that made him incompetent. It is true he was peremptorily challenged by the plaintiffs, but this required one of their peremptory challenges, which were exhausted, as the record shows, before the panel was completed. 3 Black. Com. 363; 2 Graham & Waterman on New Trials, 245, *et seq.*

The action of the Circuit Court on various questions of evidence was correct, except in its refusal to permit the defendant to be fully examined by counsel for the plaintiffs as to the effect of the business of the plaintiffs, as merchants, on his business. The fullest cross-examination, calculated to elicit a statement of the true state of feeling on the part of defendant towards the plaintiffs as rivals in business, should have been allowed. The defendant had testified for himself, and had asserted that he was not actuated by malice in writing the letter which was the alleged libel for which the action was brought. He had stated that he was a merchant, and that he had been ordered out of the store of the plaintiffs a short time before the writing of the letter spoken of above, and that he had no ill-feeling towards the plaintiffs. It was the right of the plaintiffs to interrogate him as to the rival business of

the plaintiffs in competition with his, and how theirs had affected his, with a view to weaken or overthrow his statement as to the impulse under which he wrote the letter complained of. The vital point in the case is the feeling which prompted the writing of the letter. The defence is, that the defendant acted under an honestly entertained belief of the truth of what he wrote, and with the innocent purpose to advise the insurance company for its advantage and in the interest of honesty and fair dealing. This is the only defence which can shield him from the just consequences of the letter. The jury are to determine the sincerity of this defence, and no obstacle should be thrown in the way of the effort to test it by ascertaining the relations between the defendant and the plaintiffs, when the letter was written, with a view to discover the motive actuating the writer, so as to determine the truth of his declaration as a witness, that he was not moved by malice to write the letter.

We find no fault with the instructions. The law was propounded by the instructions given with substantial accuracy. The principles of law, applicable to the facts of this case, are plain and simple. There is but a single controverted question in the case; viz. the motive of the defendant in writing the letter, and the grounds he had for making the statements in it. He wrote it, and it is libellous, and damages should be awarded, according to the judgment of the jury, unless it should appear that the defendant acted honestly, and from good motives in writing it. If the occasion was used by the defendant to defame the plaintiffs, or to injure them by inducing the withholding of the money due them on the policy of insurance, because he disliked them, or from any other evil motive, he should be found guilty. On the other hand, if the defendant had learned that it was well understood in the neighborhood that the plaintiffs had burned their store, and he believed this to be true on reasonable grounds, and that the charge could be established by evidence; and acting under this belief, and from a desire, honestly entertained, to shield the insurance company from the unjust demand of the plaintiffs, or in the general interest of justice and fairness, and not from any evil motive, he wrote and sent the letter, he should be

found not guilty. It was the right of the defendant to communicate the information he had to the insurance company, if his sole purpose was to do good by preventing the consummation of wrong and injustice; but if he had no such information, or was not warranted in believing the truth of what he wrote; or made haste to communicate a false charge, where it might do harm, for the purpose of doing injury, in some way, to a rival in business, or from any unworthy motive, his conduct deserves, and should receive condemnation and punishment. It was the right of the defendant to show what he had heard and believed as to the fire, and what induced him to write the letter, with a view to vindicate his act as one of which the plaintiffs had no right to complain. It was the right of the plaintiffs to meet this defence, and overthrow it, if they could, by any pertinent evidence.

We make no comment on the evidence, but because of the action of the court in holding Berry to be competent as a juror in this case, and in denying to the plaintiffs the right to examine the defendant as to the effect of the business of the plaintiffs on his business, we reverse the judgment, grant a new trial, and remand the case.                    *So ordered.*