LOUISVILLE, NEW ORLEANS AND TEXAS RAILROAD COMPANY
*v.* JESSIE O. MASK, ADMINISTRATRIX.

1. JUROR. *Competency of. Employee of party.*
    An employee of one of the parties to an action is incompetent to sit as a juror
    in the trial thereof, and should be rejected upon a peremptory challenge.
    *Hubbard* v. *Rutledge,* 57 Miss. 7, cited.

2. SAME. *Competency of. Tales juror. Section 1661, Code of 1880, construed.*
    Section 1661, Code of 1880, which provides that "it shall be a good cause to
    challenge any tales juror, that he has served as such in the trial of as many
    as three *cases* at that or the last preceding term of the court," does not
    apply to a juror who is a member of the regular panel for the week, but only
    to a juror called to supply a deficiency in such panel.

3. RAILROAD COMPANY. *Failure to stop at station. Liability for.*
    A railroad company carrying passengers is liable in damages for any injury
    resulting to a passenger on its train, from the failure of its employees to call
    out the name of the station and stop sufficiently long for such passenger to
    get off the train, at his destination. *R. R. Co.* v. *Scurr,* 59 Miss. 456, cited.

4. SAME. *Failure to stop train at station. Mistake of conductor. Case in judg-
    ment.*
    And, in case of such failure on the part of a railroad company, it is not relieved
    from liability by the fact that, after the train had begun to slow up at the
    station where a passenger wished to get off, the conductor looked into the
    train and failing to see the passenger, who had gone on the rear platform of
    the coach, signaled the train to go ahead, because he thought such passenger
    had gotten off.

5. SAME. *Injury from failure to stop train at station. Evidence of. Case in judg-
    ment.*
    In an action for damages resulting from the failure of a railroad company to
    stop its train for a passenger to get off at the station of his destination, it is
    competent for the plaintiff to show that the train was not stopped at the
    station, but was only stopped after having passed the station and several
    hundred yards from it, where the passenger got off the train, and by reason
    of having been carried by the station missed his conveyance and was com-
    pelled to walk to his home, three-quarters of a mile, over a wet and muddy
    road at twelve o'clock at night, and that, being old and feeble, the walk and
    exposure caused him to contract a sickness from which he never recovered,
    and which rendered him unfit for attending to his business up to the time of
    his death.

6. SAME.  *Failure to stop train.  Measure of damages.*
   Upon the state of case above set forth the plaintiff should not be limited
   in his recovery to nominal damages, but should be allowed actual damages,
   if anything.

APPEAL from the Circuit Court of Coahoma County.

GEO. F. MAYNARD, ESQ., special judge, presiding by agreement, Hon. J. H. Wynn having been of counsel in the case.

On March 2, 1885, H. Mask purchased a ticket at Memphis, Tenn., from the Louisville, New Orleans and Texas Railroad Company to Lula, a regular station on its line in this State, and took passage on the first train for Lula; his ticket was duly taken up and cancelled by the conductor. When the train approached the station the whistle was sounded and the train began to slow up. Mask and one Haynes, who were then the only passengers on the train, took their baggage and went upon the rear platform of the car. The conductor having looked into the car, and failing to see the two passengers, signaled the train to go ahead, and it did so. The name of the station was not called out. Mask and Haynes, having failed to get off, rushed forward and exclaimed that they were being carried beyond their station, and asked that the train be stopped. The conductor immediately signaled the train to stop, which was done, the train then being several hundred yards beyond the depot. Mask got off the train and went back to the depot, and finding no conveyance there had to walk home, a distance of three-quarters of a mile. This was about twelve o'clock at night, and the night was dark, cold, and rainy, the roadway was muddy, and Mask, who was an old and feeble man, was very much exhausted when he reached home. He went to bed immediately, and there remained for some days, and still continuing enfeebled, he made various efforts to regain his health, but without avail, and on 22d of April, 1886, died. Before his death he instituted this action against the Louisville, New Orleans and Texas Railroad Company to recover damages for the injury inflicted on him, and it was revived in the name of his administratrix, Mrs. Jessie O. Mask, after his death.

When the cause came on for trial at the March, 1887, term of

court, counsel for the plaintiff "asked A. G. Hartgroves, a member of the jury, on his *voir dire*, whether or not he was in the employ of the defendant, and upon this being answered in the affirmative, plaintiff's counsel challenged said juror for cause. Before passing upon the competency of said juror, the court, at the instance of counsel for defendant, examined said juror further upon his *voir dire*, whereupon he stated that he knew nothing of the facts of this case, that he had never talked to any one about said facts, and had never heard of the case until that morning, and that he was not biased in favor of the defendant or against the plaintiff, that he was perfectly free to return a fair and impartial verdict. Whereupon counsel for the defendant resisted said challenge for cause of said juror." The court sustained the challenge and the defendant excepted.

Thereupon counsel for the defendant challenged for cause the juror James Young. "Said juror stated on his *voir dire* that at the October term, 1886, of said court he served as a juror in more than two cases; that he was not summoned as one of the regular panel of jurors for that term, but was summoned on the first Monday morning of court, and served for the ensuing week by order of the court, and was then sworn in and impaneled as a member of the regular *venire* for that term of court, and as such served for the ensuing week; that he had been regularly summoned as a regular juror for the present week of court" and had been regularly impaneled. The court overruled the challenge for cause made by the defendant.

It was shown by the testimony of Mrs. Mask and two physicians that Mask had been, some time in 1884, suffering from nervous prostration; that he had grown better, and was at the time he was carried by the station at Lula able to attend to his business, but that after that night he had never been able to attend to any business, and had never been well up to the time of his death, and that his services were worth one hundred dollars per month to his family. The evidence of the two physicians was further to the effect that his sickness after the walk from Lula, and continuing to the time of his death, was most probably induced by his exposure,

and being compelled to walk from the railroad station to his home. It was further shown that a servant and horse were in waiting for Mask at the station, but that the train having passed, and no one having gotten off, the servant returned home, supposing that Mask had not come.

The defendant objected to the admission of the evidence as to defendant's sickness as too remote, but this objection was overruled.

The jury found for the plaintiff, and assessed the damages at one thousand dollars. The defendant appealed from the judgment of the court on such verdict.

*W. A. Percy,* for the appellant.

1. That the case was not one for punitive damages is manifest. As soon as it was discovered that the passengers had not gotten off and at their request the train was at once stopped. They made no request or demand that it should be backed to the station, they gave the conductor no opportunity of correcting his unintentional error by carrying them back, but at once, of their own accord, and without any requirement of the conductor that they should do so, got off where it stopped. The conductor was polite and courteous. At the utmost plaintiff was only entitled to compensation for the actual damage suffered. *Chicago R. R. Co.* v. *Scurr,* 59 Miss. 456.

2. There is no proof of actual damage such as the law recognizes to the extent of a dollar. The amount awarded is punitive in its character, and so grossly excessive, as compared to the slight inconvenience and actual damage, that it is hardly to be conceived that it will be allowed to stand. The feeble health and age of plaintiff's intestate created no enlarged duty or responsibility on the part of defendant. *Sevier* v. *Vicksburg R. R. Co.,* 61 Miss. 8.

The evidence of the two physicians shows that the objections of defendant to their testimony and that of Mrs. Mask should have been sustained.

It was too remote. Mask's illness was not the natural necessary result of being carried past the depot. Defendant's neglect was not the proximate cause. *Hobb* v. *London, etc., Ry. Co.,* L. R. 10 Q. B. 111; *Indianapolis, etc., Ry. Co.* v. *Birney,* 71 Ill. 391; *Lewis* v. *Flint and Pere Marquette Ry. Co.,* 18 Am. & Eng. R. R.

Cases 263 ; *Henry* v. *St. Louis, Kansas City and Northern Ry. Co.*, 12 Am. & Eng. R. R. Cases 136. The exposure to the cold, the change from a heated car to the outside atmosphere, were important elements in producing his sickness, and these must necessarily have concurred had he been landed on the platform at Lula. From his own witnesses it appears that riding instead of walking might have produced the same result. Can it be said that carrying the plaintiff past the depot was the " *causa causans* " of the sickness from which he suffered?—that the walk of three-quarters of a mile was the cause of all his trouble? Are not the facts that he was liable to this character of attack, that he was old and feeble, that in going from Lula to his home in that weather and at that hour of the night by any mode of conveyance he ran great risk of bringing on attack, and that this was a risk voluntarily assumed by him in leaving Memphis, to cut any figure in the case ? The defendant was not responsible for the weather or for his bodily infirmities. It was liable for any actual damage resulting from negligently carrying him past the depot, but only for such actual damage as was the natural and probable result of that act. See *Marble* v. *Worcester*, 4 Gray 395.

*Outrer & Cutrer*, for the appellee.

1. The *juror* Young was not a *tales juror* at the last preceding term of the court, and certainly he was a *regular juror* at the time the challenge was interposed. The statute, Code 1880, § 1661, creates a cause to challenge any *tales juror* who " has served as such in the trial of as many as three cases at that or the last preceding term of the court." The record shows that cause did not exist, and the challenge was very properly overruled.

2. And the court was equally free from fault in sustaining the challenge to the juror Hartgroves. The record shows he was, at the time of the trial, in the employ of the company as its clerk or employee, and disqualified *propter affectum*. *Hubbard* v. *Rutledge*, 57 Miss. 7 ; *Central Ry. Co.* v. *Mitchell*, 63 Ga. 173 ; Thompson and Merriam on Juries, § 185 ; 3 Blackstone, marg. p. 363 ; 2 Tidd's Practice 853.

3. It was clearly appellant's *duty* to cause its train to stop and re-

main stationary at the depot to which the intestate had paid his fare a sufficient length of time to have enabled him to alight therefrom with safety, and in default appellant became liable to answer for all damages necessarily resulting. Thompson's Carriers of Passengers 226–232 ; *Chicago Railroad Co.* v. *Scurr*, 59 Miss. 462 ; *Sevier* v. *Vicksburg Railway Co.*, 61 Miss. 11 ; *Nilson* v. *N. O. & N. E. Railway Co.*, 63 Miss. 352 ; *Southern Railway Co.* v. *Hendrick*, 40 Miss. 374 ; *N. O., etc., Railway Co.* v. *Stratham*, 42 Miss. 607 ; *Thompson* v. *N. O., etc., Railway Co.*, 50 Miss. 315 ; *Dawson* v. *L. & N. Railway Co.*, 11 Am. & Eng. R. R. Cases 134 ; *Bucher* v. *N. Y. C., etc., Railway Co.*, 21 Ib. 361 ; notes compiled in 18 Ib. 259 ; notes compiled in 26 Ib. 263 ; Shearman and Redfield on Negligence, § 277 ; 1 Rorer on Railroads 479.

4. Compensatory damages in a case like this at bar must embrace a return for loss of time, bodily and mental suffering, loss of or injury to health, and all expenses of medical attendance and nursing which are the immediate and natural or proximate consequences of the act. *Terre Haute Railroad Co.* v. *Buck*, 98 Am. & Eng. R. R. Cases 234 ; *Cincinnati Railroad Co.* v. *Eaton*, Ib. 254 ; *Filer* v. *New York Central Railroad Co.*, 49 N. Y. 42 ; Pierce on Railroads 301, 302 ; Sutherland on Damages 62, 78, 102, 103 ; *International Railway Co.* v. *Terry*, 21 Am. & Eng. R. R. Cases 326 ; 32 Miss. 17 ; 36 Ib. 660 ; 40 Ib. 375 ; 43 Ib. 180 ; 44 Ib. 467.

And a predisposition or sensitiveness to disease, making the injury done particularly severe or aggravating its effects, does not relieve the party inflicting such injury from answering for the full consequences of his act. *Stewart* v. *City of Ripon*, 38 Wis. 584 ; *Louisville, etc., Railway Co.* v. *Falvey*, 23 Am. & Eng. R. R. Cases 522 ; see, also, same volume, notes on page 536 ; *Barber* v. *Reese*, 60 Miss. 906 ; 42 Miss. 621.

5. The evidence introduced to show the character and extent of damages suffered by the intestate was legitimate, competent, and tended directly to the support of that issue. There was no claim for punitory damages. All that was asked was compensation.

*J. W. Cutrer*, of counsel for the appellee, argued the case orally.

ARNOLD, J., delivered the opinion of the court.

The juror Hartgroves, being in the employment of appellant was subject to challenge, for that cause. He was not *omni exceptione major*. He would have been disqualified at common law, and we have no statute removing such disqualification. It does not matter that he had the self-confidence to swear that he could try the cause impartially. It was not for him to determine his competency on that point. When the fact was developed that he was in the employment of appellant, the law adjudged him incompetent. The law does not lead jurors into the temptations of a position where they may secure advantage to themselves by doing wrong, nor permit the possibility of the wavering balance being shaken by self-interest. *Hubbard* v. *Rutledge*, 57 Miss. 7; 3 Black. Com. 363 ; Thompson & Merriam on Juries, § 185.

The cause assigned for the challenge of the juror Young was without merit. That part of § 1661 of the code which furnishes cause of challenge to tales jurors did not apply to him. He was not a tales juror, but a member of the regular panel for the week. A tales juror is one added to a deficient panel so as to supply the deficiency. Bouvier's Dictionary.

No principles of law are better settled than that a railroad company carrying passengers, in order to afford them opportunity to leave the train at their places of destination, is bound to have the names of different stations announced upon the arrival of the train, and then to stop the train for a sufficient length of time for passengers to get off with safety, and that a railroad company is liable for the loss or injury which may result to a passenger for a violation of this duty. Thompson on Car. of Passengers 226; *Railroad Co.* v. *Scurr*, 59 Miss. 456 ; *Southern Railroad Co.* v. *Hendricks*, 40 Ib. 374.

It is not pretended that the name of the station at which Mask was to get off was announced when the train arrived at that point. Some of the witnesses say that the train was stopped, while others say it was not, and there is no explanation why Mask, who left his seat and went to the platform to get off, did not do so if the train was in fact stopped. In this conflict of testimony, it was for the

jury, and not for the appellate court, to determine the truth of the matter.  *Vicksburg Bank* v. *Moss*, 63 Miss. 74.

The circumstances that as the train approached the station and its speed was reduced, Mask, with the view of getting off, left his seat and went to the rear platform of the passenger car and closed the door after him, and that the conductor afterward went to the front door or into the coach, and, not seeing Mask or his companion, supposed they had left the train, and thereupon ordered the train to move on, do not relieve the company from liability. It was the duty of the conductor to know that he had passengers for that station, to have the name of the station announced, and to stop the train. He had no right to assume, because he did not see Mask and his companion in the passenger coach, that they had leaped in the dark from the moving train. Such risk is not generally taken. Sane and prudent people do no such thing.

The facts in evidence did not warrant exemplary damages, and they were not asked or awarded. Whether the injury complained of, resulted from the failure of the company to stop its train, and what actual damages were proved, were questions for the jury, and not for this court to decide. The testimony produced by appellee, on these points, was competent, and we are unable to say, that it was not sufficient to justify and support the verdict.

The action of the court in regard to the instructions, is free from error. The instructions given could not well have been more favorable to appellant. The modification of its second instruction, in reference to the measure of damages, by inserting " actual " in place of " nominal," was proper. If appellee was entitled to recover anything, it was more than nominal damages.

*Affirmed.*