412 So.2d 230 (1981)
Ted A. BELESKY & Jean Belesky
v.
CITY OF BILOXI, Mississippi and Sullivan, Long & Hagerty, An Alabama Corporation.
No. 52964.
Supreme Court of Mississippi.
December 23, 1981.
Rehearing Denied April 21, 1982.
Hopkins & Logan, Floyd J. Logan, Gulfport, for appellant.
Dukes, Carrubba & Dukes, William F. Dukes, Walter W. Dukes, Gulfport, Page, Mannino & Peresich, Paul J. Delcambre, Jr., Biloxi, for appellee.
Before PATTERSON, C.J., and SUGG and LEE, JJ.
*231 PATTERSON, Chief Justice, for the Court:
Mr. & Mrs. Ted A. Belesky brought suit against the City of Biloxi and Sullivan, Long & Hagerty, hereinafter S.L.H., in the Circuit Court of the Second Judicial District of Harrison County for damages to their residence allegedly caused by construction of a sewer line adjacent to their house and defective maintenance of a 30 inch storm drain.
From a jury verdict for the defendants, the Beleskys appeal, contending the trial court erred:
1. In refusing to excuse from the jury the seven employees of the City of Biloxi for cause;
2. In refusing to allow the Beleskys to cross-examine defendants' expert witness, Harry Simpkins, concerning a prior inconsistent statement in his written report as to the cause of the subsidence;
3. In allowing the defendants' expert witnesses to state an opinion as to the cause of the subsidence based upon reports prepared by independent third parties;
4. In allowing the witness Laier to express an expert opinion when he admitted the lack of data made his opinion speculative;
5. In refusing to allow the Beleskys to introduce the deposition of A.L. Turner for impeachment purposes; and
6. In overruling the Beleskys' motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial.
The Belesky residence was built by Metro Homes in 1966 or 1967. A.L. Turner, associated with Metro at that time, testified that he sold the house two or three years after its completion to Dr. Ferguson, owner before the Beleskys, at a 25% discount because of settlement and cracking of the bricks and floor.
The house was built directly upon the original soil. Turner testified that the common economic practice at the time was to lay the slab on the lot rather than use fill dirt underneath it. The cracking and settling of the property caused by subsidence began about a year after completion and was thought to have stabilized some six or eight months before the Beleskys purchased it in 1972. At that time Ted Belesky noticed slight cracking, but after the sewer construction project in May or June 1974 the cracks widened. He notified S.L.H. of the condition. He also testified the southern half of his lot was continually soggy with water during the sewer construction work. Belesky dated the damage as occurring in May 1974. Since the year 1974, Belesky did not notice any further cracking or subsidence.
The parties stipulated the City of Biloxi did sewer construction work in the area adjacent to the Belesky house, through S.L.H. who contracted with the city for the project. The parties further stipulated that Biloxi has been responsible for the maintenance and repair of a drainage culvert running east and west under Big Lake Road to Oak Ridge Circle from 1965 to the present. The Belesky home is situated approximately 18 feet north of the drainage culvert and approximately 87 feet west of the ditch for the sewer pipe that was excavated on the east side of Big Lake Road which ran generally north and south. Pursuant to the contract with Biloxi, S.L.H. excavated the ditch and collected the water that drained into it from "well-points" which were dug at intervals along the ditch line. The water thus collected was pumped onto the surface of Big Lake Road and drained toward the 30 foot storm drain located south of the Belesky residence. There was testimony that during the construction of the sewer line water accumulated and pooled in the street in front of the appellants' residence and in their yard. Evidence was also introduced that water from the sewer ditch did not accumulate in the appellants' yard. There was also testimony that the storm drain for the city, a part of the east-west drainage system, had been broken and filled with sand. It was also stipulated that test boring data, sieve analysis data, the site plan depicting the adjacent streets and drainage easements might be introduced into evidence.
*232 The evidence leaves no doubt that the house has settled considerably since its construction. The present issue is limited to whether the construction of the sewer line and the maintenance of the east-west drainage culvert caused further subsidence.
Several experts offered their opinion about the cause of the subsidence. Witness Fairley testified the settlement was caused by the highly changeable organic strata beneath the house. Witness Polatty testified the subsidence was caused by the rapid draw-down of water from the pumping and dewatering operation as well as the movement of fine sands beneath the slab caused by the pumping process. Witness Simpkins testified the cause of subsidence was poor soil and improper preparation for construction of the house and that the sewer line did not in any way contribute to the settlement. Witness Laier also testified the installation of the sewer line did not cause the subsidence. However, this last opinion contradicts a previous letter in which he had stated the sewer construction project caused a part of the settling process. The evidence presented was therefore conflicting and as such presented an issue to be resolved by the jury.
The Beleskys first contend for reversal that several prospective jurors should have been excused for cause when they were challenged because either they or their spouses were employees of the City of Biloxi. Those challenged for cause included three jurors who were later removed by peremptory challenges. After the peremptory challenges were exhausted there remained four employees of the city who were impaneled and participated in the trial as well as a fifth who was selected as an alternate juror, but did not participate in reaching the verdict. We first consider the prospective jurors who were unsuccessfully challenged for cause but who became subject to the peremptory challenges. In Hubbard v. Rutledge, 57 Miss. 7 (1879), it is stated:
The juror, Berry, was not above all exception as a juror, and should have been rejected by the court. He was in the service of the defendant as a clerk and that made him incompetent. It is true he was peremptorily challenged by the plaintiffs, but this required one of their peremptory challenges, which were exhausted, as the record shows, before the panel was completed. Id. at 12.
The resolution of the issue as to these three jurors will also dispose of the issue as to the four jurors who actually participated in the trial because they are similarly situated in their relationship to the city.
In Jackson v. Board of Mayor and Aldermen of Town of Port Gibson, 146 Miss. 696, 111 So. 828 (1927), a civil suit against "the Board of Mayor and Aldermen" of the Town of Port Gibson, a judgment was entered for the plaintiff in the sum of $500 for damages in a death case. In that case, E.P. Guthrie, the son of an alderman was called and permitted to serve on the jury after the plaintiff had exhausted his peremptory challenges. The issue as to whether Guthrie should have been permitted to sit as a juror was resolved by this court on appeal. We held the municipality was the real party to the lawsuit and that the son of the alderman was not disqualified as a juror because his alderman father was not a party. It need be noted the challenge was one of kinship and not one of employment. However, the court went on to say, in dictum, that the alderman would not be competent to serve as a juror, where the municipality was a party to the suit, because he was an employee of the municipality. We are of the opinion that Jackson is not in point.
We think the right of the prospective jurors to be impaneled must be decided upon their employment relationship with the City of Biloxi and the likelihood of influence the employment would have upon the verdict. There can be little doubt had there existed a direct master-servant relationship, as in a corporation, then the prospective jurors would be disqualified for cause. See Hubbard v. Rutledge, 57 Miss. 7 (1879), and Louisville, N.O. & T. Railroad Company v. Mask, 64 Miss. 738, 2 So. 360 (1887). The rationale of these cases is "the *233 law does not lead jurors into the temptations of a position where they may secure advantage to themselves by doing wrong, nor permit the possibility of the wavering balance being shaken by self-interest." Louisville, N.O. & T. Railroad Co. v. Mask, 64 Miss. at 744, 2 So. at 361.
Those challenged for cause and excused by peremptory challenges were Edward Galle, an auxiliary policeman of the City who served without pay; Patrick J. Smith, an employee of Biloxi Port Commission; and Rebecca Fields, whose husband was a lieutenant with the Biloxi Police Department.
It is contended that the "full paid" employees of the police department are protected by the civil service status as to their employment. It is also urged by the defendants that the jurors who are engaged in the teaching profession in the Biloxi Municipal Schools are also protected in their employment by statutory provisions and the CETA employee was paid with federal funds. From this the argument is advanced that prospective jurors in the categories mentioned, as well as their spouses, have status differing from the ordinary employer-employee relationship, and therefore the probability of influence from their remote employer, the City of Biloxi, is greatly diluted if not obviated, even though their remuneration is from the city.
There being no charge of fraud and no allegation of bias or prejudice other than that mentioned, we are of the opinion the trial court properly refused to excuse for cause the prospective jurors and those jurors who actually served. In concluding as we have, we are mindful that decisions of this sort are largely and properly left to the discretion of the trial court and that jurors are under oath to well and truly try the issues presented to them. In Butler v. State, 241 So.2d 832 (Miss. 1970), although it be a criminal case, we find language believed to be appropriate to this case,
However, the selection and empaneling of juries, in the final analysis, is a judicial function. It is the clear intendment of the Mississippi jury statutes, in the absence of any evidence of fraud or bad faith and where no actual prejudice is shown to have resulted, that breakdowns or omissions which may occur in administrative procedures shall not deprive the trial court of its inherent power to empanel juries for the trial of causes, both civil and criminal. The ultimate duty rests upon the trial court, and he has the power, to see to it that each juror who serves possesses the qualifications prescribed by law, in which determination he may be aided by the voir dire inquiries of counsel. There is nothing in the record in this case to indicate that there was fraud or bad faith or that actual prejudice resulted to appellant from the failure of the board to sign its minutes upon the occasions mentioned. Therefore, it must be presumed, in the absence of a showing of anything to the contrary, that the trial court performed its duty and that the appellant received a fair trial by an impartial jury, consisting of persons lawfully qualified to serve. 241 So.2d at 835.
There is presently nothing before the court to indicate there was fraud or bad faith or that actual prejudice resulted to the appellant. We therefore conclude this assignment of error is without merit.
Turning to appellant's second contention that the trial court erred in refusing to permit cross-examination of appellee's expert witness, Harry Simpkins, concerning a statement in his written report which supported the Beleskys' position as to the cause of the subsidence, we are of the opinion cross-examination was properly limited because the report was based on mere possibilities rather than probabilities. We stated in Gulf Insurance Company v. Provine, 321 So.2d 311, 314 (Miss. 1975), that "[i]t is not necessary that the testimony of an expert witness be capable of demonstration, it is sufficient if his testimony is probably true rather than possibly true, or simple guesswork or conjecture." Also, it was a question of law for the trial court to determine if the expert's opinion was based on sufficient facts or evidence. See Gulf, Mobile & Ohio Railroad Co. v. Hollingshead, 236 So.2d *234 393 (Miss. 1970); 49 Miss.L.J. 1, 21-22 (1978). Therefore, we conclude the trial court did not err in disallowing impeachment on a report founded on conjecture.
We are of the further opinion the expert testimony of James Fairley which was partly based on soil tests performed by Gulf States Testing Laboratories (admitted into evidence) was properly introduced even though his opinion as to the cause of subsidence was based on the foregoing tests performed by an independent third party. Since the data was in evidence and the Fairley Engineering Company was involved with the Richland Park Drainage Improvement Project including the soil tests, Fairley was competent to testify. An expert may consider testimony of other experts and any test data properly in evidence in reaching his expert conclusion. In Entex, Inc. v. Rasberry, 355 So.2d 1102 (Miss. 1978), we held medical expert testimony inadmissible which was based on a second x-ray not introduced into evidence and which the expert physician had not personally examined. Quoting with approval Wild v. Bass, 252 Miss. 615, 173 So.2d 647 (1965), we stated the following in Entex:
As an expert he could consider testimony of other doctors properly in evidence and also the result of any X-rays properly in evidence, but he should not have been allowed to base his testimony on reports of other doctors and X-rays not in evidence. (252 Miss. at 627-28, 173 So.2d at 651-52).
It is apparent that the facts of the instant case are virtually identical to those in Wild; therefore, the holding in the instant case is controlled by the rule enunciated in Wild that a ".. . medical expert should not be allowed to base his opinion on matters not within his own knowledge and not in evidence in the case." (252 Miss. at 628, 173 So.2d at 652). 355 So.2d at 1103.
Even though Fairley admitted having no personal knowledge of the soil boring tests, he could testify as to his opinion based on tests properly in evidence.
This brings us to appellant's assertion that James Laier's expert testimony was erroneously admitted because his opinion was based on speculation. We again are of the opinion this is not meritorious. The trial court in its discretion determined, after lengthy voir dire, that Laier's testimony was admissible provided hypothetical questions were propounded. We think the trial court did not abuse its discretion in that Laier's testimony was supported by sufficient facts in evidence to sustain it. Gulf Insurance Co. v. Provine, supra.
Also appellant cites error in the trial court's refusal to allow the introduction of the deposition of A.L. Turner for impeachment purposes. We are of the opinion the trial court properly refused the introduction of certain pages of Turner's deposition. Although the appellant laid the foundation for introduction of the deposition, it is also true that he did not offer the entire deposition. The primary basis for appellees' objection to the proffered evidence was if a part of the deposition were to be admitted, then the entire deposition should be admitted. Appellant did not offer the entire deposition, so the trial court correctly sustained the objection. Our discovery statute, MCA § 13-1-232(1), (4) (Supp. 1981) provides:
(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts.
Also the two pages sought to be introduced were tendered after Turner had left the witness stand and the court was in recess. The request for the deposition to be admitted after the witness had been discharged was untimely and took away from the witness any opportunity to explain inconsistencies or discrepancies in his testimony. Therefore, we think the trial court correctly ruled the deposition inadmissible. Moreover, the contents of that sought to be introduced into evidence was read from the deposition for the benefit of the jury by the witness, leaving little, if any, room for any prejudice to the plaintiffs. We think the trial court did not err in its ruling.
*235 Finally, appellant argues the jury verdict is contrary to the uncontradicted physical facts, and therefore, against the overwhelming weight of the evidence. There was conflicting evidence as to the cause of the settlement and cracking of the Belesky residence; moreover, experts for both parties testified to differing causes of the subsidence. "Conflicts in the evidence are ... resolved by the jury, and before a reviewing court can interfere with the verdict, testimony must so strongly preponderate that the court can safely say it was overwhelmingly in favor of the appellant." Jackson v. Griffin, 390 So.2d 287, 289 (Miss. 1980). We are of the opinion the jury verdict was not against the overwhelming weight of the evidence.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
HAWKINS, Justice, specially concurring:
I specially concur with the original opinion in this case. My concern is with the circuit judge's refusal to excuse certain jurors for cause.
In this case there were eight (8) jurors who were challenged for cause because of their economic relationship to the defendant municipality, namely: (1) Rebecca L. Field; (2) Edward S. Galle; (3) Patrick J. Smith; (4) Helen Russell; (5) Janice Hayes; (6) Charlotte Havelin; (7) Adelia C. Farris; and, (8) Cathy D. Guthrie.
The husband of juror Field was a lieutenant in the Biloxi Police Department. Juror Galle was employed by the City as an auxiliary policeman. Juror Guthrie was employed by the City as a secretary in the police department.
Jurors Russell and Havelin were employees of the Biloxi School District; the husband of juror Farris was employed by the Biloxi School District.
Juror Smith was employed by the Biloxi Port Commission; juror Hayes was a CETA employee of the City.
The court overruled the challenge for cause of all these jurors.
The plaintiffs then peremptorily challenged jurors Field, Galle and Smith.
Juror Guthrie was chosen as an alternate juror and did not participate in the deliberations of this case.
In my view, the circuit judge was in error in refusing to excuse for cause jurors Field, Galle and Guthrie. Because jurors Field and Galle were excused peremptorily and juror Guthrie served as an alternate juror, however, no prejudice resulted.
The plaintiffs have failed to make a record of any manner in which the remaining jurors are economically connected to the City in such a way as to indicate there was an abuse of discretion by the trial court in refusing to excuse these jurors for cause.
When a juror is shown to be directly connected with some defendant, such as an employee or spouse of the employee, even though the defendant is a public body or institution, I think such juror should be excused for cause. Jackson v. Mayor and Board of Aldermen of Port Gibson, 146 Miss. 696, 111 So. 828 (1927); Hubbard v. Rutledge, 57 Miss. 7 (1879). Beyond that, some additional showing should be made of a financial or economic connection which could influence the juror's impartiality. Absent such a showing, it is clearly within the sound discretion of the trial judge whether such juror is qualified to hear the case.
BOWLING, J., joins in this specially concurring opinion.