ISHEE, J.,
for the Court:
¶ 1. On January 6, 2004, Jean Triplett (Triplett) underwent an elective hip-replacement surgery due to her struggles with bilateral degenerative hip disease. Approximately one day after the surgery, Triplett suffered from a stroke and eventually died on October 25, 2006. Triplett’s heirs and estate (Triplett’s heirs) filed suit in the Circuit Court of Warren County, Mississippi. River Region Medical Corporation, William C. Porter Jr., M.D., John Adams, M.D., Patty Stone, CRNA, Gladys Howard, R.N., and John and Jane Does 1-20 (River Region), were named as Defendants. Prior to the jury trial, River Region filed a motion for summary judgment, which was granted as to Dr. Porter, Howard, and River Region regarding any liability for Dr. Lamar McMillin, the physician who performed the surgery, under the theory of respondeat superior. At the close of the trial, the jury returned a verdict in favor of River Region, after which Triplett’s heirs filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied; and Triplett’s heirs timely appealed, alleging the following errors: (1) the circuit court 'committed reversible error by granting summary judgment to River Region as to Dr. McMillin based on a determination that Triplett’s heirs failed to provide qualified expert testimony establishing the proper standard of care under which Dr. McMillin should have been operating; (2) the circuit court committed reversible error by declining to strike a juror who was employed by a law firm that had performed legal work for River Region; (3) the circuit court committed reversible error by denying a motion for a mistrial after allegedly prejudicial remarks were made by River Region in opening statements; (4) the circuit court committed reversible error by prohibiting a surgical consent form from being introduced into evidence and by allowing an expert affidavit to be introduced into evidence; and (5) the circuit court committed reversible error by denying and granting certain jury instructions. River Region timely filed a cross-appeal, regarding the circuit court’s denial of a motion in limine. We find no error in the circuit court’s decisions and, therefore, hold that Triplett’s heirs’s issues are without merit. Additionally, we find that, given our ruling, River Region’s cross-appeal is moot.
FACTS AND PROCEDURAL HISTORY
¶ 2. Triplett suffered from bilateral degenerative hip disease for many year's pri- or to her death in 2006. In 1997, Triplett was diagnosed with bilateral carotid steno-sis and was recommended for a carotid endarterectomy. Triplett refused the sur *1035 gery, and by 1999, her stenosis had progressed such that she finally consented to and underwent a right carotid endarterec-tomy. She refused to consent to a left carotid endarterectomy, despite medical warnings that her failure to undergo the surgery, coupled with her forty-one-year smoking habit, would place her at an extremely high risk of stroke. She was evaluated by several cardiovascular surgeons in 2002, all of whom informed her that she had severe artherosclerotic vascular disease and strongly recommended that she undergo a bilateral carotid endarterecto-my, and advising her that failure to undergo the surgery would place her at continued high risk of stroke.
¶ 3. In 2003, Dr. Porter, a Vicksburg orthopedic surgeon, evaluated Triplett regarding her ongoing hip pain. Due to her increasing pain, Triplett chose to undergo elective hip-replacement surgery. Prior to the surgery, Dr. Porter referred Triplett to Dr. McMillin, a family practitioner, for a pre-operative history and physical exam. During the exam, Triplett allegedly failed to inform Dr. Adams, an anesthesiologist, Drs. Porter and McMillin, and the certified nurse anesthetist, Stone, that she had been suffering from a severely occluded stenotic internal carotid artery for several years. She further allegedly misrepresented medical conditions that arose after the 1999 right carotid endarterectomy. Specifically, she failed to inform her doctors that she had severe atherosclerotic vascular disease and that she had been advised that she was at a high risk of stroke if she did not have a bilateral endarterectomy. Furthermore, Dr. Adams and Stone advised Triplett that one risk of anesthesia was death. Despite this warning, Triplett proceeded with the surgery.
¶ 4. On the morning of January 6, 2004, Dr. Adams and Stone prepared the seventy-one-year-old Triplett for surgery and noted elevated blood-pressure readings, but they attributed this to surgical anxiety. Triplett emerged from the surgery without incident and was admitted to a regular room on the evening of January 6, 2004. She allegedly greeted family and visitors the evening of her surgery, and she appeared normal into the morning after her surgery. In the early morning of January 7, 2004, nurses noted that Triplett “continue[d] to rest quietly with no signs or symptoms of distress.” Later in the morning, however, Triplett began exhibiting slurred speech and left-sided weaknesses and was eventually diagnosed as having suffered a stroke.
¶ 5. At trial, the parties were in dispute regarding the type of stroke Triplett had experienced. Triplett’s heirs presented testimony that the stroke was a direct result of the surgery. River Region countered with testimony that the stroke was not induced by the surgery, but it was embolic in nature, caused from Triplett’s underlying right-side stenosis and her forty-one-year history of continued smoking. Regardless of the nature of the stroke, Triplett passed away on October 25, 2006.
¶ 6. Prior to Triplett’s death, she filed suit against River Region, Dr. Porter, Dr. Adams, Stone, Howard, and John and Jane Does 1-20. The complaint alleged theories of negligence, medical malpractice, re-spondeat superior, breach of contract, and asked for punitive damages. After Triplett’s death, the heirs filed a “Suggestion of Death,” substituting themselves as plaintiffs in the case.
¶ 7. Before the jury trial began, River Region filed a motion for summary judgment. The circuit court initially denied the motion and granted Triplett’s heirs additional time to provide qualified expert witness testimony to support their theory of the case. However, after the heirs filed a supplemental affidavit of their expert *1036 witness, River Region requested that the court reconsider their original motion for summary judgment in light of the newly filed expert-witness affidavit. The court agreed and, after a hearing on the matter, determined that Triplett’s heirs had failed to provide qualified expert testimony sufficient to establish the proper standard of care, breach of the standard of care, and a causal connection between the alleged breach and the claimed injury. Accordingly, the circuit court granted summary judgment as to Dr. Porter, Howard, and River Region regarding Dr. McMillin’s treatment.
¶ 8. Thereafter, on May 12, 2008, a jury trial commenced. During voir dire, a juror informed the circuit court that she worked for an attorneys’ office that had performed some legal work for River Region. However, the juror stated that she was not familiar with the work in question nor had she participated in the work in question. She further stated that she was not biased in favor of River Region or any other party. Triplett’s heirs moved to strike the juror for cause, a motion which was denied. Triplett’s heirs declined to use a peremptory strike, and the juror was placed on the jury panel.
¶ 9. During opening statements at trial, counsel for River Region made the following statement: “a doctor from Virginia is the only one, apparently, [that Triplett’s heirs] could find in the whole United States to testify against [River Region].” The circuit court sustained an objection from Triplett’s heirs and advised the jury to disregard the statement. However, it was not until the next morning, after arguing an unrelated motion to the circuit judge in chambers, that counsel for the heirs stated: “I think a mistrial is warranted based upon the comment [in opening statements], but[,] at a minimum, I think I should be allowed to designate a local expert.” The circuit court treated counsel’s remark as a motion for a mistrial and denied it, holding that motions for mistrial must be made contemporaneously with the correlative objection.
¶ 10. After Triplett’s heirs rested their case, River Region presented their case-in-chief and called several witnesses, including Dr. Adams, Triplett’s anesthesiologist. During the heirs’ cross-examination of Dr. Adams, River Region objected to the attempted use of Dr. Adams’s surgical consent form, which Triplett had reviewed and signed prior to the surgery. However, after a bench conference, the circuit court determined that because lack of informed consent was not in the pretrial order, it was not at issue and, therefore, not relevant to the case. Triplett’s heirs then made a proffer of the evidence outside the presence of the jury, thus preserving the issue for appeal.
¶ 11. Thereafter, River Region called another witness, Dr. Ahmed E. Badr. An affidavit of Dr. Badr had been filed by River Region at the beginning of litigation. At trial, during cross-examination, Triplett’s hems questioned Dr. Badr while simultaneously reading parts of his affidavit into evidence. Upon re-direct examination, River Region introduced the affidavit into evidence over the objection of Triplett’s heirs.
¶ 12. At the close of trial, certain instructions were given to the jury. Triplett’s heirs asserted that the exclusion of their instruction P-25 and the granting of River Region’s instruction D-1B constituted reversible error. Instruction P-25 advised the jury of the so-called “eggshell-skull doctrine,” wherein liability exists for damages stemming from aggravation of prior injuries or conditions. River Region contested Triplett’s heirs’ instruction P-25 based on the assertion that the instruction’s explanation of the eggshell-skull doc *1037 trine did not apply to the case because it did not address Triplett’s failure to advise her physicians of her precarious medical conditions prior to the surgery. The issue, according to River Region, was whether Triplett’s misrepresentations of and omissions about her medical conditions to her physicians contributed to her subsequent medical problems and whether, if the physicians had known of the medical conditions, the surgery would have proceeded.
¶ 13. On May 20, 2008, the jury returned a verdict in favor of River Region by a vote of eleven to one. After denying Triplett’s heirs’ motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, an order was entered for River Region on June 17, 2008. Three days later, Triplett’s heirs appealed. Thereafter, River Region filed a cross-appeal on July 3, 2008, regarding the circuit court’s denial of a motion in limine.
DISCUSSION

I. Summary Judgment in Favor of River Region

¶ 14. This Court reviews de novo the grant or denial of summary judgment; and therefore, “the lower court’s decision is reversed only if it appears that triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party.” Slatery v. Ne. Miss. Contract Procurement, Inc., 747 So.2d 257, 259 (¶ 4) (Miss.1999) (citing Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss.1999)). Additionally, with regard to summary judgment in medical-malpractice cases, “expert testimony is generally required to survive summary judgment and establish the negligence of a physician.” Sheffield v. Goodwin, 740 So.2d 854, 856 (¶ 6) (Miss.1999) (citations omitted). A circuit judge’s “determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion and that decision will only be disturbed when there has been a clear abuse of discretion.” Id. at 856 (¶ 6).
¶ 15. Prior to the trial, River Region filed a motion for summary judgment alleging that Triplett’s heirs had failed to provide adequate expert witness testimony sufficient to establish a standard of care, breach of the standard of care, and a causal connection between the breach and the claimed injury. The circuit court initially denied River Region’s motion and allowed Triplett’s heirs additional time to provide qualified expert-witness support for their theory of the case.
¶ 16. After the heirs filed their supplemental expert affidavit, River Region requested that the circuit court reconsider its original motion for summary judgment. The court agreed and, after conducting a hearing on the motion, granted summary judgment as to several parties, including River Region with regard to Dr. McMillin. The court based its decision on the Triplett heirs’s failure to provide an expert who was qualified to articulate the standard of care applicable to several medical providers, including Dr. McMillin.
¶ 17. The supreme court has held that testifying experts are to demonstrate familiarity with a specialty, not merely a particular subject. Hubbard v. Wansley, 954 So.2d 951, 958 (¶ 17) (Miss.2007). Furthermore, admissibility of expert testimony depends on the scope of an expert’s knowledge and experience. Univ. of Miss. Med. Ctr. v. Pounders, 970 So.2d 141, 146 (¶ 17) (Miss.2007).
¶ 18. Specifically, the circuit court held that the Triplett heirs’ expert witness failed to establish, either through knowledge or experience, the specific standard of care applicable to Dr. McMillin. The court found the expert witness appeared to *1038 provide merely vague, conclusory statements, including asserting that Dr. McMil-lin should have conducted “further testing to determine the risk of perioperative stroke.” However, at no point does it appear that the expert witness informed the court of specific testing or procedures Dr. McMillin should have conducted.
¶ 19. Additionally, the record indicates that prior to providing his expert opinion, the Triplett heirs’ expert witness failed to review the records of Triplett’s cardiovascular physicians. Triplett’s cardiovascular physicians had advised her to undergo a bilateral endarterectomy or face continued high risk of stroke. Nonetheless, the heirs’ expert witness asserted that his opinion was a “valid opinion,” regardless of any additional medical records which may exist as to Triplett’s case. However, the expert witness later admitted that Triplett should have told Dr. McMillin about the complications and risks surrounding her carotid arteries and about her refusal to undergo the recommended surgery.
¶ 20. We find that the record provides ample support for the circuit court’s granting of summary judgment in favor of River Region, even when viewed in a light most favorable to Triplett’s heirs. This issue is without merit.

II. Motion to Strike a Juror for Cause

¶ 21. As stated previously by this Court: “[d]espite circumstances that tend to indicate a potential for bias on the part of a juror, a juror’s promise that he [or she] will be able to be fair and impartial is entitled to considerable deference.” Smith v. State, 989 So.2d 973, 982 (¶ 30) (Miss.Ct.App.2008) (citing Toyota Motor Corp. v. McLaurin, 642 So.2d 351, 356-57 (Miss.1994)). Additionally, “[t]he determination of whether a juror is fair and impartial is a judicial question that will not be set aside unless there is a finding that such determination clearly appears wrong.” Bennett v. State, 933 So.2d 930, 942 (¶ 31) (Miss.2006) (internal quotations omitted).
¶ 22. During voir dire, it was discovered that a potential juror was employed by a law firm which had previously handled work for River Region. Questioning of the juror revealed that she had neither worked on the project involving River Region nor did she know anything about the project. The juror also affirmatively stated that she had no problem serving on the jury and was not biased toward River Region.
¶ 23. Triplett’s heirs moved to strike the juror for cause. The circuit court declined to do so, and the heirs did not use a peremptory strike against her. Accordingly, the juror was placed on the jury.
¶ 24. The Triplett heirs cite cases such as Berbette v. State, 109 Miss. 94, 67 So. 853, 854 (1915), and Louisville, N.O. & T. Ry. Co. v. Mask, 64 Miss. 738, 2 So. 360, 361 (1887), for the proposition that employees of a party may not be empaneled on a jury hearing a case involving that party. However, in this case, the juror was not an employee of River Region. Rather, her employer was a law firm. While she admitted that an attorney at the firm had performed legal work in at least one case for River Region, she also stated that she was unfamiliar with the case and the work performed. She further informed the court that she would not feel pressured to favor River Region Medical Corporation or any other party and could competently serve as a juror.
¶ 25. Accordingly, we find no error on the part of the circuit court; therefore, this issue is meritless.

III. Motion for a Mistrial

¶ 26. This Court reviews failure to declare a mistrial under an abuse-of-discretion standard. Coho Res., Inc. v. *1039 McCarthy, 829 So.2d 1, 18 (¶ 50) (Miss. 2002). Here, at the commencement of the jury trial, River Region’s counsel remarked in the opening statement that the heirs were “apparently” unable to find another expert witness in the entire United States to support their theory of the case. The Triplett heirs’ counsel objected, and the circuit court sustained the objection and directed the jury to disregard the remarks.
¶27. On the morning after opening statements were made, counsel for both parties met in the circuit judge’s chambers to discuss an unrelated motion. After the motion was argued, the Triplett heirs’ counsel stated: “I think a mistrial is warranted based upon the comment, but, at a minimum, I think I should be allowed to designate a local expert.” The circuit judge deemed counsel’s remarks equivalent to a formal motion for a mistrial and denied the motion. The judge stated that the motion should have been made contemporaneously with the objection pursuant to the “contemporaneous-objection rule.”
¶ 28. Indeed, the Mississippi Supreme Court has stated, in no uncertain terms: “a judge can only make a determination of prejudice if the defendant makes a timely objection and motion for a mistrial. Strictly speaking, timeliness means the objection and motion must be made contemporaneously with the allegedly improper utterance.” Meena v. Wilburn, 603 So.2d 866, 874 (Miss.1992).
¶ 29. The record is clear that not only was the Triplett heirs’ motion for a mistrial untimely, but the circuit court also took it upon itself to advise the jury to disregard the statements at the time the statements were made. We find the circuit court did not abuse its discretion in denying the motion for a mistrial. This issue is without merit.

TV. Introduction of Certain Pieces of Evidence

¶ 30. “When reviewing the [trial] court’s decision to admit or exclude evidence, [the appellate court is] bound by an abuse of discretion standard of review.” Vaughn v. Miss. Baptist Med. Ctr., 20 So.3d 645, 654 (¶ 28) (Miss.2009).
¶31. During River Region’s case-in-chief, several witnesses were called, including Dr. Adams, Triplett’s anesthesiologist. Prior to Triplett’s surgery, Dr. Adams presented Triplett with a surgical consent form that described the procedure and the potential risks. The record indicates Triplett reviewed and signed the document prior to her surgery.
¶ 32. On cross-examination of Dr. Adams, Triplett’s heirs attempted to introduce the surgical consent form into evidence. River Region objected on the basis that Triplett’s heirs had not introduced a lack of informed consent theory into their case-in-chief and that River Region had not raised the issue in their direct examination of Dr. Adams. After a bench conference on the matter, the circuit court ruled that the surgical consent form was inadmissible because lack of informed consent was not listed as a theory of the case in the pretrial order and, therefore, was not a valid issue in the case. Triplett’s heirs then made a proffer of the surgical consent form.
¶ 33. The record supports the circuit court’s determination that the Triplett heirs did not introduce the issue of lack of informed consent into their case-in-chief, nor was it listed in the pretrial order. River Region did not make any mention of lack of informed consent during the trial until Triplett’s heirs attempted to introduce the surgical consent form. Thus, the circuit court did not abuse its discretion by *1040 preventing the surgical consent form from being introduced into evidence.
¶ 34. River Region also called expert witness, Dr. Badr. Prior to the commencement of the trial, Dr. Badr executed an affidavit as to his opinion of the case. During cross-examination, the Triplett heirs began questioning Dr. Badr regarding the medical care provided to Triplett, while simultaneously reading into evidence parts of Dr. Badr’s affidavit. Upon redirect examination, River Region moved to place the affidavit into evidence. The circuit court allowed the affidavit to be introduced into evidence over a hearsay objection made by the Triplett heirs.
¶ 35. Under Mississippi Rule of Evidence 801(d)(1)(A), a statement is not hearsay if it is a prior statement made by the witness which is “inconsistent with the declarant’s testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceedings, or in a deposition ... [and][t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement.” Additionally, “[ujnder Rule 801(d)(1)(A) the prior inconsistent statements may be admissible as substantive evidence if they were made under oath, e.g., at a deposition or at a judicial proceeding.” M.R.E. 801(d)(1)(A) cmt. Accordingly, the Triplett heirs’ use of the affidavit in an attempt to show inconsistency in Dr. Badr’s testimony brought the affidavit into the realm of admissibility. Therefore, the circuit court did not abuse its discretion in allowing the affidavit of Dr. Badr to be admitted into evidence. We find both allegations of error regarding the admissibility of evidence to be without merit.

V. “Eggshell Skull Doctrine”

¶ 36. When reviewing the grant or denial of jury instructions, “two questions should be asked: Does the instruction contain a correct statement of law and is the instruction warranted by the evidence?” Franklin Corp. v. Tedford, 18 So.3d 215, 239 (¶ 48) (Miss.2009) (citations omitted). Furthermore, “defects in specific instructions will not mandate reversal when all of the instructions, taken as a whole, fairly — although not perfectly — announce the applicable primary rules of law.” Id.
¶ 37. The Triplett heirs’ assert that the exclusion of their instruction P-25 and the granting of River Region’s instruction D-13 constituted reversible error. Instruction P-25 advised the jury of the so-called “eggshell-skull doctrine,” wherein liability exists for damages stemming from aggravation of prior injuries or conditions.
¶ 38. River Region argues that the Triplett heirs’ explanation of the eggshell-skull doctrine did not apply to the case because it did not address Triplett’s alleged failure to advise her physicians of her precarious medical conditions prior to the surgery. The issue, according to River Region, was whether Triplett’s failure to fully inform her physicians, and the misrepresentations she made to her physicians, contributed to her ultimate medical problems and whether, if the physicians had known the full extent of Triplett’s medical conditions, the surgery would have proceeded.
¶ 39. Specifically, the Triplett heirs’ instruction P-25 read, in part, as follows:
If you find form [sic] a preponderance of the evidence that the Plaintiff had any pre-existing physical or mental condition which became aggravated as a proximate result of the Defendant’s negligence, then he [sic] is entitled to recover for any of the elements of damages which you find from a preponderance of the evidence have resulted from the ag *1041 gravation of such condition, if any. You are not authorized, however, to apportion or diminish any damages you find to have proximately resulted from the accident sued upon based on any pre-exist-ing condition.
¶ 40. Conversely, River Region’s instruction D-13 stated as follows:
If you find from a preponderance of the evidence in this case that Jean B. Triplett failed to seek further medical treatment in a timely manner or failed to report to her doctors or medical professionals physical symptoms and conditions that would or could affect the medical professional’s treatment of her or that Mrs. Triplett misrepresented to Dr. McMillin that she was having no symptoms for her carotid stenosis or failed to report to Dr. McMillin the (extensive) stenosis of her right carotid artery, and if you find that such failure on the part of Jean B. Triplett, if any, caused her to endure certain medical conditions or incur certain bills that she otherwise could have avoided by seeking timely medical treatment or reporting to her doctors and medical professionals physical symptoms and conditions that would or could affect the medical professionals treatment of her, then you are instructed that Jean B. Triplett’s heirs are not entitled to recover damages for those medical conditions and/or medical bills that she would have avoided by seeking timely medical treatment or reporting to her doctors and medical professionals physical symptoms and conditions that would or could affect the medical professional’s treatment of her based on information provided to her by ... [River Region],
¶ 41. In this case, the Triplett heirs’ proposed jury instruction P-25, which discussed the general theories of law surrounding the eggshell-skull doctrine, would not have fully informed jurors of the applicable law. Indeed, the eggshell-skull doctrine, as explained by Triplett’s heirs in instruction P-25, would not apply to a case such as this, where a patient had a duty to advise her physicians of her medical condition prior to surgery, yet she failed to do so. If Triplett had provided this information to her physicians and the surgery was nonetheless conducted, perhaps we would have a different analysis and conclusion. However, jurors were entitled to an accurate portrayal of the law as applied to this case. Therefore, we find the circuit court’s denial of instruction P-25 and granting of instruction D-13 to be proper. This issue to be without merit.

VI. Motion in Limine

¶ 42. Because all findings of the circuit court are affirmed, River Region’s cross-appeal is moot.
¶ 43. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED ON DIRECT APPEAL, AND THE CROSS-APPEAL IS RENDERED MOOT. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.