CITY OF JACKSON *v.* McFADDEN.

(Division B.   Dec. 13, 1937.)

[177 So. 755.   No. 32890.]

(1)

W. E. Morse, of Jackson, for appellant.

J. B. Hutton, Jr., and Robertson & Robertson, all of Jackson, for appellee.

Argued orally by **W. E. Morse**, for appellant, and by **J. B. Hutton, Jr.**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This is an appeal by the City of Jackson from a judgment of the circuit court in favor of F. L. McFadden because of an injury sustained by him in a fall from a seat in the stadium while witnessing a football game on the Fair Grounds, in Jackson. In 1920 the City of Jackson leased from the State the land upon which the stadium was erected, for the purpose of maintaining a fair, and later erected the stadium. Under chapter 249, Laws 1930, the lease was renewed and extended until 1940, and section 1 of said chapter concludes as follows: "That the consideration for this lease is that the City of Jackson shall pay annually to the State of Mississippi the sum of One Hundred Dollars ($100.00) said amount to be paid each year during the life of this lease, and that said City of Jackson shall continue to operate a State Fair on said

lands and/or occupy and use a part of same for a baseball park and football stadium.''

The declaration as filed contained two counts, the demurrer to the second count being sustained, and the allegations therein are immaterial for the purposes here involved. It was alleged in the first count that the stadium was constructed of removable seats, and consists of stringers propped up by supports at the back side of the tiers, which slant down to the base of the structure on the side of the stand next to the ball field inside of the stadium. Fastened to these stringers were open brackets supporting the seat planks, the brackets being made of narrow strips of metal lying in horizontal position to hold the seats level, and having a small one-inch flange on the front and back sides to hold the seat boards in place, and resembling the capital letter I turned on its side. The loose seat boards are laid across the brackets, without being tied together or fastened down in any way. The seat boards are one inch thick, and are only held in place on the brackets by the one-inch flange on the latter. The top seats of these tiers are 15 feet from the ground, and these seats, like the others in the stadium, were not fastened down, this being specifically true of the top seat on which the appellee sat, and there was no guard rail back of the seats, including the one on which the appellee sat. A sheer 15-foot drop was left open and unguarded, with nothing to prevent any person sitting on the top row from falling off. The flanges or metal tips were not sufficient safeguards to hold the seats in place, and prevent injury to those sitting on them. The declaration further alleges that across the entire section the seats were made of three planks, instead of one solid plank, and these planks overlapped one another about one foot, so that the south end of the plank on which appellee sat at the game in question was above and higher than the flange of the seat bracket, there being nothing whatever to prevent it from falling to the ground should some person brush against it in standing

up during the game. That the stadium was maintained by the city in its proprietary capacity, and at the time of this cause of action and prior thereto it was so maintained. That on the 31st of October, 1936, the appellee came to the stadium to see a football game between Mississippi State and Sewanee teams. The appellant, the City of Jackson, invited the spectators to come, and impliedly invited the appellee, holding out that the stadium was a safe place in which to sit and watch the game. The appellee paid the required fee for the privilege of admission, entered the stadium, and sat on the top row of section L, occupying seat 7, row 15, or thereabouts. That during the early part of the game, in order to see over the heads of persons lower down in the stand who were standing, appellee stood on the footboard, about 17½ inches below his seat, which was provided for the use of the spectators on the top row of section L; that others on the same row stood at the same time, and, when the play was over, and appellee and others on the same row were ready to sit down, the seat plank, being of light weight and unfastened, slipped, moved out of place, and plaintiff was plunged backward to the ground, a fall of 15 feet, which seriously and permanently injured him, breaking his leg, severely spraining his left wrist, and inflicting internal injuries to his lungs and other organs. Appellee brought suit in the lower court to recover the sum of $30,000 as compensation for the injuries suffered in this accident.

The city pleaded the general issue and plea of ultra vires, and special pleas, one of which set forth that the stadium was used and occupied by the Mississippi State Alumni; that the city had no interest in the contest; that it received no remuneration for the use of the property; that the field for the contest was marked off, and the employees paid without let or hindrance on the part of the City of Jackson. It also pleaded that the city had not passed an ordinance or order authorizing the use of said stadium, and that under the law the city has no

right to speak through anything except its minutes. Another special plea set up that the appellee purchased a seat in a different part of the stadium from that which he occupied when the injury was sustained. The demurrer to these pleas was sustained.

Another special plea set up that the City of Jackson had no legal right to stage a football contest or to lease the stadium for that purpose. A demurrer to this plea was sustained. Another special plea stated that the appellee was on the top seat of section L, and that during the excitement of the play all of the spectators stood up; that one of the spectators between plaintiff and another person became overbalanced, and in attempting to regain his balance he pulled appellee down, and also the other party, pushing the board off as he did so, and falling himself; that plaintiff was injured through his own assumption of risk, and through the act of another spectator, and not through the act of the City of Jackson. There was a replication to this plea.

Another special plea states that the stadium is of the usual type of construction for a wooden football stadium, is the kind used in this territory, and is safe for a person employing ordinary care and caution, being of standard construction. Issue was joined on this plea after the demurrer had been overruled.

Another special plea set up that the appellee had bought a seat lower down in section L, and had changed to the top seat in the same section, by this act assuming the risk of a top seat; and his fall when the spectators rose in the excitement of the game was the result.

The case went to trial in the circuit court. The jurors were drawn both from the City of Jackson and from the district outside of the city. The appellee made a motion to disqualify jurors from the City of Jackson, on the ground that, since they were taxpayers, under the common law they would not be competent to sit on the jury. This motion was overruled, but in impaneling the jury the judge sustained objections to each of the jurors who

were taxpayers in the city, and the jury was made up of jurors living outside of the city limits. It is stated that approximately 85 per cent. of qualified electors from whom jurors are selected live in the City of Jackson. The appellant, however, did not exhaust its peremptory challenges, but excepted to the ruling of the court in excluding the jurors living within the City of Jackson, and who were taxpayers of the city. This is here assigned for error, and constitutes one of the principal questions in the case.

It was held in England, and in a number of the states, that a taxpayer of a municipality was incompetent to serve as a juror on account of interest; but a number of states hold that such interest, being one in common with the general public, is not such interest as would disqualify a juror.

In Jackson v. Town of Port Gibson, 146 Miss. 696, 111 So. 828, it was held that the son of an alderman of the city was not disqualified as a juror in an action against the municipality for the death of a person occasioned by coming in contact with an electric wire, since the municipality was the real party to the suit, with no liability on members of the city council. The specific question here involved was not there presented and discussed, but it was involved in that case; and manifestly counsel there did not consider that being a mere taxpayer was a disqualification. In discussing the question there raised, that the son of one of the aldermen was disqualified by such fact, the court said: "Unless it can be said that the board of mayor and aldermen are parties to the litigation, the challenge for cause was on the law, properly overruled by the court. The municipality was the real party to the lawsuit, and the declaration contained no statement upon which individual liability of the members of the city council could be bound, or could be held liable, or could be said to have an interest, except such as any other taxpayer of the municipality is presumed to have. An alderman would not be competent to serve as

a juror, where the municipality was a party to the suit, because he is an employee of the municipality. . . . Guthrie, Sr., not being a party to the suit against the municipality of which he was an alderman, his son was not disqualified because of relationship to him. To hold that he would be disqualified would be to hold that all those persons who are related within the ninth degree, under the civil law, would, if members of a corporation, thereby become disqualified.''

It seems to have been the practice throughout the history of the state to regard mere taxpayers of a municipality as competent jurors. This period extends far beyond the memory of living men, and it is high evidence that the common law, as adopted in this state, did not recognize the fact of being a taxpayer as a disqualification for jury service in a suit against a municipality. This court has often announced that it will decide what the common law is in this state; and the common law of this state is different in material respects from that which existed in England, and which exists in many other states of the Union. For instance, the common law of Mississippi does not include the statutes of England in existence at the time of the Revolution, but was adopted independently of such statutes, as the law of this state.

As decisions bearing on the power of the court to determine for itself what the common law is, and that it will not adopt such parts of the common law of England as are contrary to conditions within this state, see Planters' Oil Mill v. Yazoo & M. V. R. Co., 153 Miss. 712, 121 So. 138; Interstate Co. v. Garnett, 154 Miss. 325, 122 So. 373, 756, 63 A. L. R. 1402. We think that the mere fact of being a taxpayer, with no interest different from other taxpayers of the city, does not, per se, disqualify a juror. The fact that the proposed juror is a taxpayer may, however, be the basis of a bias or prejudice that might, owing to the existence of such bias or prejudice, disqualify; and therefore, in impaneling a jury where the

municipality is a party to the litigation, the matter should be carefully inquired into in the case of a juror who is a taxpayer of the municipality; and, if the trial judge is of the opinion, after such inquiry, that such juror is not fair and impartial, he may be excused by the judge under section 2030, Code 1930, which reads as folows:

"Any person otherwise competent, who will make oath that he is impartial in the case, shall be competent as a juror in any criminal case, notwithstanding the fact that he has an impression or an opinion as to the guilt or innocence of the accused, if it appear to the satisfaction of the court that he has no bias or feeling or prejudice in the case, and no desire to reach any result in it, except that to which the evidence may conduct; but any juror shall be excluded, if the court be of opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error."

The concluding part of this section makes the excusing of the juror by the trial judge, in the exercise of the discretion vested in him, final; and it is provided in such case that this is not assignable as error. Therefore, in the present case, while it was error to disqualify the jurors on the ground that being taxpayers, of itself, disqualified them in a suit involving the municipality, it did not appear that the jurors who were impaneled, and before whom the case was tried, were not fair and impartial. The great object of jury trial is to secure a fair and impartial jury, and, where that is attained, no judgment will be reversed for a mere error in excusing competent jurors.

In Moore v. City of Dallas, 200 S. W. 870, 871, the Texas Court of Civil Appeals, in discussing the competency of jurors who were taxpayers, said: "The first assignment of error asserts that the court erred in refusing to sustain the plaintiff's challenge for cause of the jurors who were taxpayers in the city of Dallas, and in requiring him to try his case before such jurors. The

proposition is that: 'A resident citizen of the city of Dallas and a taxpayer in said city is disqualified as a juror in a suit of this character against said city.' The challenge for cause was, because disqualified under the statute and because interested in the matter in controversy. The assignment will be overruled. The question presented has been definitely decided, we think, against the appellant's contention in the following cases: Peacock v. City of Dallas, 89 Tex. 438, 35 S. W. 8; [Missouri, K. & T.] Railway Co. v. Bishop [Tex. Civ. App.] 34 S. W. 323; City of Marshall v. McAllister, 18 Tex. Civ. App. 159, 43 S. W. 1043; Martin v. Somervell County, 21 Tex. Civ. App. 308, 52 S. W. 556; City of Jackson v. Pool, 91 Tenn. 448, 19 S. W. 324. It is not believed that the difference in the wording of the statute relating to the disqualification of judges and that relating to the disqualification of jurors materially affects the question. The decisions above referred to rest upon the view that the interest of a taxpayer of a city is too indirect, remote, and contingent to render him disqualified to serve as a juror in a suit in which the city is a party. If the interest in either case, even though indirect, were immediate, real, and substantial, it would doubtless be sufficient to disqualify, but our decisions, as we understand them, are to the effect that resident taxpayers of a municipal corporation have no such interest in the subject matter of a suit for damages against it."

In City of Detroit v. Detroit Ry., 134 Mich. 11, 95 N. W. 992, 99 N. W. 411, 104 Am. St. Rep. 600, the court there said: "A question of great importance to practitioners was presented on the trial of this case. A number of the jurors called in the case were taxpayers in the city of Detroit. They were challenged for cause on the ground of interest. Were they competent jurors? There is no statute of this state to which our attention has been directed which, with respect to this case, modifies the common-law qualifications of jurors. . . . The question here is as to the competency of these jurors at

common law. The authorities are not agreed. A number of cases, and perhaps numerically the weight of authority, sustain the contention of appellant's counsel. But there are not wanting cases which hold that the interest of a taxpayer in a municipality is not sufficient to exclude him upon the ground of interest. See Kemper v. Louisville, 14 Bush. [Ky. 87] 94; City of Marshall v. McAllister, 18 Tex. Civ. App. [159] 160, 43 S. W. 1043; Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220; Rathbun v. Thurston County, 8 Wash. 238, 35 P. 1102; Jackson v. Pool, 91 Tenn. 448, 19 S. W. 324; Eastman v. Burke County, 119 N. C. 505, 26 S. E. 39; City of Omaha v. Cane, 15 Neb. 657, 20 N. W. 101; City of Omaha v. Olmstead, 5 Neb. [446] 453; Clermont County [Com'rs] v. Lytle, 3 Ohio 289. The practice in this state, so far as we are advised, is in line with the authorities cited.''

We approve the decision referred to, holding that being a taxpayer does not, per se, disqualify a person from jury service in a suit to which the city is a party.

It is also contended by counsel for the City of Jackson that the maintenance of the stadium was ultra vires, and that the city could not be held liable for the acts of its officers in permitting the stadium to be used, or for negligence in maintaining the stadium; because the city, it is contended, had no authority to operate and maintain a stadium. We think this contention is without merit, and that statute chapter 249, Laws 1930, from which we have quoted above, itself authorizes the city to maintain a stadium on the ground leased to it by the state. The point would also be controlled, even in the absence of this statute, by Byrnes v. City of Jackson, 140 Miss. 656, 105 So. 861, 42 A. L. R. 254.

It is also contended that the city should have been given a peremptory instruction. A number of reasons are assigned in support of this contention, but we think they are without merit. The evidence shows that there were no safeguards to prevent persons on the top seats from falling or being thrown to the ground, and that

common prudence would require that the city should provide a guard rail, or some support which would prevent a person occupying these top seats from being precipitated to the ground, and that a situation such as was disclosed by the evidence could reasonably be anticipated by any prudent person. There was sufficient proof of negligence in the situation here disclosed, in that the seats on top were without guards, were left loose, not being fastened by clamps or otherwise to prevent displacement during a period of excitement while the game was in progress. The top seat, as the evidence discloses, on which the appellee was sitting, and from which he arose at an exciting point in the game, was displaced, and, when he attempted to resume his seat, he was precipitated to the ground. An employee of the city who prepared the stadium for this game testified that both ends of the top plank in the section involved were on top of the other seats, consequently the plank was easily displaced when the spectators stood up.

It is contended by the appellant that there was an intervening cause, in that one of the spectators in attendance on the game displaced the seat, and that this person, in trying to regain his balance after losing it, pulled the appellee to the ground, which act was the proximate cause of the accident and consequent injury—not the negligence of the city. While the evidence as to appellee being thrown to the ground, or off his balance by the other person, in trying to regain his own balance, and in so doing displacing the plank which served as a seat, is disputed, yet the plank's being out of place was due, in part at least, to the negligence of the city; and the act of this party in catching hold of the appellee, as alleged, to save himself from falling, if a fact, was not sufficient cause, being an involuntary act, directly connected with the insecurity of the seat; and the removal of the seat from its proper place is at least a concurring proximate cause of the accident.

We have examined the giving of instructions 1, 2, 3,

and 5 for the plaintiff, and the refusal of instructions 1, 2, 3, and 4 for the defendant, and find no reversible error therein. Consequently we find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.