286 So.2d 814 (1973)
Margretta Vaughn Lee KING et al.
v.
J.J. "Jud" DUDLEY and L.C. Glaspie.
No. 47334.
Supreme Court of Mississippi.
December 17, 1973.
*815 Lawrence Chandler, Calhoun City, Cliff R. Easley, Jr., Bruce, for appellants.
Threadgill & Smith, Columbus, Henry L. Lackey, Calhoun City, for appellees.
GILLESPIE, Chief Justice:
This is a suit by the next of kin of Franklin Dennis Lee, deceased, (plaintiffs) against J.J. Dudley and L.C. Glaspie (defendants) to recover for the alleged wrongful death of Franklin Dennis Lee. At the close of the plaintiffs' case, the court sustained defendants' motion for a directed verdict. Judgment was entered for the defendants, and plaintiffs appealed.
Dudley operated a pulpwood yard in the town of Bruce, where he purchased pulpwood from the general public. Dudley employed Glaspie who operated a hoisting machine used in unloading pulpwood from the seller's truck and in loading the pulpwood on railroad cars. Lee sold one or two truckloads of pulpwood to Dudley each week, and on the occasion when he met his death, brought to Dudley's yard his truck loaded with two units of pulpwood. A unit of pulpwood weighs approximately 7,000 pounds. After the first unit had been unloaded from the truck, Dudley was on the railroad car straightening up the wood on the car while Glaspie hooked the hoisting cable around one end of the second unit of pulpwood and Lee hooked the cable around the other end. The unit of pulpwood was then hoisted from the truck, and the hoisting machine was moved a short distance from the truck. At this time Dudley called to Glaspie to come to the freight car and help him move a large stick of pulpwood that had gotten caught. Glaspie then took the hoisting machine out of gear, put the parking brakes on, got off the machine and left the wood suspended about twelve feet in the air while he went to the railroad car to help Dudley. The railroad car was approximately twenty feet from the place where the pulpwood was left suspended in the air. And while thus suspended, Lee walked under the suspended wood, which fell upon and killed him.
The testimony on behalf of Dudley and Glaspie, who were called as adverse witnesses, was that the cause of the wood falling was the fact that the cable that Lee had hooked had come loose and that if the cable was not properly hooked, it would come loose. The jury had before it pictures of the cables and evidence to the effect that once the cable is hooked and the wood is lifted, there is no way for the hook to become disengaged. In our opinion, this made a jury issue as to whether the wood fell because the cable that Lee had hooked came loose or whether it fell for some other reason.
Dudley testified that a load of wood had fallen once before due to a broken cable, but there is no contention that the cable in this instance broke. Dudley also testified that during wet weather the clutch on the machine would slip, resulting in the wood falling. But on the day that Lee was killed, the weather was clear. Dudley testified that it only took about a minute for Glaspie to assist him in straightening out the stick of pulpwood and that as a general practice he never left wood suspended for over three or four minutes at a time. Dudley also testified that he had warned Lee a few minutes before he was killed that it was dangerous to walk under the wood while it was suspended in the air and that the machine could turn over. This was the second load of wood that Lee had brought to the Dudley yard on the day in *816 question, and Dudley testified that each time he had warned Lee not to walk under the wood when it was being hoisted. Glaspie testified that he tested the machine after Lee had been killed and that the machine was functioning properly.
Harold Inman, who purchased from Dudley about a year and a half later the woodyard where the incident took place, testified that he was familiar with the custom and usage in the pulpwood industry and that leaving pulpwood hoisted on a machine unattended was dangerous and hard on the machine and was never done in the industry in that locality. He stated that leaving a machine with wood hoisted was bad practice and bad judgment. Another witness, Clovis Russell, also testified that it was very dangerous to leave a load of wood suspended in the air for any length of time and that proper practice is to set the load of wood on the ground before the operator of the hoisting machine leaves the machine unattended. He testified that if the cables were hooked it would not be possible for a load of wood to be lifted twelve feet in the air and then for the cable to come loose. Alex Armstrong testified that Dudley told him that pulpwood had fallen two or three times before it fell on Lee.
The question is whether there was sufficient evidence to make a jury issue on the charge that it was negligent to leave the pulpwood suspended in the air while the operator left the machine unattended. We hold that the evidence made a jury issue and reverse and remand.
As stated in cases too numerous to require citation, the rule is that in ruling on a motion for a directed verdict the court must look only to the testimony in behalf of the party against whom the motion is made and when that testimony is considered as true, along with all reasonable inferences which could be drawn therefrom could support a verdict, then the directed verdict should not be given. And in such event, the motion should be overruled even though a verdict in favor of the party against whom the motion is made would be contrary to the overwhelming weight of the evidence. Carlize v. Richards, 216 So.2d 422 (Miss. 1968).
The owner of a business is not the insurer of invitees using his premises for business reasons, and there is no liability for injuries caused by conditions which are not dangerous or which should be known by the invitee. General Tire & Rubber Co. v. Darnell, 221 So.2d 104 (Miss. 1969). Defendants rely on the Darnell case, but the facts in the present case distinguish it from Darnell.
The defendants owed a duty to use reasonable care in the operation of the hoisting machine. Leaving the machine unattended with a load of pulpwood hoisted in the air was not only dangerous, according to Dudley's own statement, but the proof showed loads of wood had fallen before, a fact relevant and material on the issue whether leaving the wood hoisted while the machine was unattended constituted negligence. There was no reason why Glaspie could not have lowered the wood to the ground before he left the machine to assist Dudley. This is the essential difference between this case and General Tire & Rubber Company v. Darnell, supra, and Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss. 1967), relied upon by defendants. The latter cases involved no affirmative action on the part of the defendants but only the acts of the injured parties. And in Jackson Ready-Mix Concrete v. Sexton, 235 So.2d 267 (Miss. 1970), the injured person was the sole actor who was a specialist employed to install electrical equipment on defendant's premises.
The case before the Court involves more than a condition and inaction on the part of defendants. In leaving the machine unattended with the wood hoisted in the air, defendants acted affirmatively in creating the situation resulting in Lee's *817 death. Lee had been warned of the danger and no doubt he was negligent in placing himself where the wood could fall on him. We are of the opinion that it cannot be said as a matter of law that Lee's negligence was the sole proximate cause of his death. If the jury should find defendants were also negligent, then their negligence would be a contributing proximate cause of the death of Lee, and the latter's negligence would constitute contributory negligence.
Although it is a close case, we hold that the case should have been submitted to the jury.
Reversed and remanded.
INZER, SMITH, ROBERTSON and BROOM, JJ., concur.