467 So.2d 657 (1985)
Henrietta W. BELL
v.
CITY OF BAY ST. LOUIS, Mississippi.
No. 54614.
Supreme Court of Mississippi.
April 10, 1985.
*659 Wynn E. Clark, Roberts & Clark, John G. Clark, Pascagoula, for appellant.
Joseph W. Gex, Gex, Gex & Phillips, Bay St. Louis, for appellee.
Before PATTERSON, C.J., and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This slip and fall case presents questions regarding default judgments and jury selection which have less than ordinary factual twists. The trial judge successfully traversed these obstacles, only to slip and fall on one of the most established points in our law.
We hold that the Circuit Court of Hancock County acted within its discretion when it thwarted Plaintiff's repeated efforts to secure a judgment by default  although in candor the defendant City of Bay St. Louis was seriously dilatory in filing its answer. We further hold that the trial judge correctly rejected Plaintiff's challenge for cause for all prospective jurors who resided in Bay St. Louis made on grounds that as taxpayers those jurors would have to pay any judgment rendered against the City.
On the other hand, the trial judge  no doubt in a moment of inattention or inadvertence  granted, at the City's request, a jury instruction that unequivocally advises the jury that contributory negligence on the part of Plaintiff  and there likely was some on the facts of this case  would bar recovery even though the City be found negligent. Because this instruction is contrary to our law of comparative negligence, the judgment below for the Defendant City must be reversed and the case remanded for a new trial.

II.
On December 1, 1978, Henrietta W. Bell, Plaintiff below and Appellant here, went to the City Hall in Bay St. Louis, Mississippi, to pay her water bill. Upon leaving, she slipped and fell on the sidewalk maintained by the City and broke her legs. According to Bell, she had lost her footing when she stepped on some grass and debris that had been left on the sidewalk by City maintenance personnel. According to the City, there was no grass or debris on the sidewalk and certainly none that was left by its maintenance personnel.
On January 25, 1980, Bell commenced this action by filing her declaration in the Circuit Court of Hancock County, Mississippi, naming the City of Bay St. Louis as the sole Defendant. Bell charged the City with negligent maintenance of its public sidewalk. After considerable pretrial proceedings, some of which are discussed below, this case was called for trial on its merits on January 11, 1982, and resulted in a jury verdict for the City.
On January 14, 1982, the Circuit Court entered final judgment in favor of the City of Bay St. Louis and against Henrietta W. Bell. Bell thereafter filed her alternative motions for judgment notwithstanding the verdict and for a new trial, both of which were overruled on January 29, 1982. This appeal has followed.

III.
We begin with the proposition that the City of Bay St. Louis had a nondelegable duty to maintain its sidewalks and other public ways in a reasonably safe condition. The City may be held liable if through its neglect an unreasonably unsafe condition is allowed there to exist and damage or injury approximately results. City of Laurel v. Upton, 253 Miss. 380, 395, 175 *660 So.2d 621, 626 (1965); see also, Walker v. Laurel Urban Renewal Agency, 383 So.2d 149, 150 fn. 1 (Miss. 1980); and Bush v. City of Laurel, 215 So.2d 256, 257 (Miss. 1968).
It is against the backdrop of this rule that Plaintiff Bell first assigns as error the refusal of the trial judge to grant, on the liability issue only, a peremptory instruction in her favor or, in the alternative, her motion for judgment notwithstanding the verdict of the jury.
Without getting into the process of weighing the evidence in the record and second-guessing the jury, let it simply be observed that there is sufficient testimony in the record by City employees that  if believed by the jury  could undergird a jury's finding that the City was not negligent.
We take such issues from the jury only where, under our familiar test, the facts are so clear that reasonable minds could not differ. See, e.g., City of Jackson v. Locklar, 431 So.2d 475, 478-79 (Miss. 1983) (standard for removing issues from jury); Paymaster Oil Co. v. Mitchell, 319 So.2d 652, 656-57 (Miss. 1975) (same); General Tire & Rubber Co. v. Darnell, 221 So.2d 104, 105-07 (Miss. 1969) (same).
Strong v. Freeman Truck Line, Inc., 456 So.2d 698, 708 (Miss. 1984).
Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found. Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1984); Weems v. American Security Insurance Co., 450 So.2d 431, 435 (Miss. 1984). When we apply this standard to the evidence before us, we may only state that the trial judge correctly denied Bell's request for a peremptory instruction as well as her subsequent motion for judgment notwithstanding the verdict.
Bell's motion for a new trial was addressed to the sound discretion of the trial court. It may be granted only if the trial judge in the exercise of his sound discretion is of the opinion that the verdict is contrary to law or the weight of the evidence. Having due regard for the evidence in the case, we hold that the trial judge acted well within his discretion when he denied Bell's alternative motion for a new trial.

IV.
Bell assigns as error the refusal of the Circuit Court to grant her motion for a default judgment. The record reflects that process was effectively served upon the City of Bay St. Louis on February 5, 1980. On July 31, 1980 Bell moved for default judgment and a writ of inquiry, citing the fact that the City had had almost six months from the date of service of process within which to respond and that the City in fact had done nothing.[1] The record reflects that a copy of the motion for a default judgment was served upon the City on July 31, 1980. On August 1, 1980, with the City apparently having continued to say naught, Circuit Judge Kosta N. Vlahos entered an order overruling and denying the motion, noting his concern as to whether he had the authority to render a default judgment against an incorporated municipality.
The City of Bay St. Louis did not file an answer until January 29, 1981. The record reflects that the City was equally dilatory in responding to plaintiff's discovery. In any event, on July 6, 1981 plaintiff filed a motion to strike answer and for entry of default judgment setting forth two grounds: the City's eleven-month delay in filing an answer and the City's refusal to respond to discovery. To be sure, striking a party's pleadings and entry of judgment by default was at the time the extreme sanction authorized for failure to make discovery. *661 Miss. Code Ann. § 13-1-237(b)(2)(C) (Supp. 1981). However, on October 21, 1981, Circuit Judge J. Ruble Griffin entered an order imposing a less severe sanction, to-wit: the granting of plaintiff's motion to compel discovery and the assessment of costs and fees for the City's dilatory practice in that regard, but overruling and denying plaintiff's motion to strike answer and for entry of default judgment.
On January 11, 1982 plaintiff Bell renewed her motion to strike answer and for entry of default judgment citing the same grounds as before. On January 11, 1982 Circuit Judge Leslie B. Grant entered an order overruling and denying this motion.
This action was brought prior to the advent of the Mississippi Rules of Civil Procedure on January 1, 1982.[2] Motions for default judgment were at the time governed by Miss. Code Ann. § 11-7-121 (1972) which contains the permissive language that "judgment may be entered." The granting or denying of a motion for default judgment has thus been regarded as committed to the sound discretion of the trial court. Ross v. Federal Deposit Insurance Corp., 261 So.2d 471, 474 (Miss. 1972); Campbell v. Campbell, 231 Miss. 658, 661-662, 97 So.2d 527, 528-529 (1957). This has never meant that the trial judge could do anything he or she wished. Sound discretion imports a decision by reference to legally valid standards. Where a trial judge in determining a matter committed to his sound discretion makes his decision by reference to an erroneous view of the law, this Court has authority to take appropriate corrective action on appeal. See City of Meridian v. Trussell, 52 Miss. 711, 713 (1876).
In the case at bar, the order of August 1, 1980 denying Bell's first motion for default judgment suggests that the trial judge was of the opinion that he had no authority to enter a default judgment against an incorporated municipality. This view of the law is incorrect. Town of Jonestown v. Ganong, 97 Miss. 67, 83, 52 So. 579, 581 (1910); City of Meridian v. Trussell, 52 Miss. 711 (1876). As a party to a civil action, an incorporated municipality is treated the same as any other litigant and is vested with the same rights and responsibilities, no more, no less. Indeed, counsel for the City conceded the point at oral argument. Under the law in effect at the time in question, the disposition of Bell's motion for a default judgment should have been made the same as would have been done had the Defendant been a private party.
On the other hand there are countervailing and equally valid standards, beginning with the one mentioned above to the effect that the default judgment procedure then in effect was not mandatory. Further, it is the policy of our system of judicial administration to favor disposition of cases on their merits. Manning v. Lovett, 228 Miss. 191, 195, 87 So.2d 494, 496 (1956); Southwestern Security Insurance Company v. Treadway, 113 Miss. 189, 197, 74 So. 143, 145 (1917). Default judgments are not favored, and trial judges have traditionally been lenient when it comes to relieving a party of the burden of a default judgment. Metts v. State Department of Public Welfare, 430 So.2d 401, 404 (Miss. 1983); Ross v. Federal Deposit Insurance Corp., 261 So.2d 471, 474 (Miss. 1972). While there is no question but that the City of Bay St. Louis skated dangerously close to fatally thin ice by its largely unjustified delay, we hold on the facts of this case that the circuit court was "barely" within its discretion in the entry of its several orders denying Bell's motion for a default judgment. The assignment of error is denied.

V.
Bell assigns as error the refusal of the trial judge to sustain her challenges for cause to all prospective jurors who were residents of the City of Bay St. Louis. Here, Bell raises a novel issue in a unique factual setting.
*662 Procedurally, on October 21, 1981  several months prior to trial  Bell filed a motion to disqualify from jury service all residents of the City of Bay St. Louis. As grounds for the motion, Bell cited the fact that any judgment would have to be paid out of the coffers of the City which were filled by the taxes paid by its residents. Therefore, Bell reasoned, the residents of the City had "a vested pecuniary interest in seeing that no judgment is rendered against the City of Bay St. Louis." Bell also cited the fact that a 1977 judgment against the City[3] in the amount of $375,000 had resulted in the imposition of a one-half cent sales tax being imposed within the City for the purpose of securing adequate funds with which to pay the judgment.
Thereafter, on January 3, 1982, just eight days prior to the trial date in this case, an article was prominently published in the local newspaper wherein the mayor of the City of Bay St. Louis announced that the debt incurred via the 1977 judgment had been retired and that the City would be in a position to "eliminate a one-half cent sales tax within the next three months."[4] However, on January 11, 1982, the morning of trial, the circuit court enters its order overruling the motion.
Thereafter at proceedings on voir dire, Bell challenged for cause all persons who were residents of Bay St. Louis. The record reflects that seven residents of Bay St. Louis were on the panel from which the jury was selected. Six of the seven acknowledged that they were aware of the one-half cent sales tax which had been levied to pay off the prior judgment. Bell challenged all seven for cause but each such challenge was denied. Bell then used her four peremptory challenges on four Bay St. Louis residents. It appears that at least one resident of Bay St. Louis did in fact serve on the jury.
Without doubt there is force in the argument advanced by Bell. That no person should serve as a juror in a case where he has an interest in the outcome is nothing more than a modern version of the ancient first principle of justice that no man shall serve as judge of his own cause. Dr. Bonham's Case, 8 Co. 114a, 118a, 77 Eng.Rep. 646, 652 (1610); In Re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955).
Louisville, N.O. & T. Railroad Co. v. Mask, 64 Miss. 738, 2 So. 360 (1877) put it well.
... [our] law does not lead jurors into the temptation of a position where they may secure advantage to themselves by doing wrong, nor permit the possibility of the wavering balance being shaken by self-interest.
64 Miss. at 744, 2 So. at 361; see also Belesky v. City of Biloxi, 412 So.2d 230, 232-233 (Miss. 1982).
The only case cited by either party on this issue is City of Jackson v. McFadden, 181 Miss. 1, 13-17, 177 So. 755, 758-759 (1937). McFadden denied a similar challenge, reasoning that "The interest of a taxpayer of a city is too indirect, remote, and contingent to render him disqualified." 181 Miss. at 16, 177 So. at 789. the Court continued, however:
If the interest in either case, even though indirect, were immediate, real and substantial, it would doubtless be sufficient to disqualify... .
181 Miss. at 16, 177 So. at 759.
McFadden involved a suit against the City of Jackson. Obviously, the burden of an adverse judgment against the City of Jackson is going to be substantially more remote and insignificant than would be the case of a judgment against the City of Bay St. Louis or any of our other smaller municipalities.
A cursory review of our cases reflect numerous instances in which juries not so pared as Plaintiff would have this one have returned substantial verdicts against incorporated municipalities. See, e.g., City of Jackson v. Locklar, 431 So.2d 475, 477 *663 (Miss. 1983); Entex, Inc. and City of McComb, Mississippi v. McGuire, 414 So.2d 437, 443-44 (Miss. 1982); City of Baldwyn v. Rowan, 232 So.2d 157, 160 (Miss. 1970); Dendy v. City of Pascagoula, 193 So.2d 559, 561, 564 (Miss. 1967).
Beyond that, it is one of the fundamental premises of our jury system that the jurors come from, and, accordingly reflect the collective conscience of, the community in which the case is heard. In the absence of other countervailing or impracticable circumstances, we regard that there is great positive value in having jurors selected at random from the community in which an accident such as this occurred.
There are other practical considerations suggested by the rule Bell would have us adopt. This State has many counties [and judicial districts within counties] where, if we were to exclude all jurors who were residents of an incorporated municipality that happened to be a defendant, there would be few if any jurors left to hear the case. Consider the practical effect of enforcing this rule where the defendant happened to be the City of Jackson, the City of Vicksburg, the City of Meridian, or the City of Hattiesburg. Moreover, if all jurors in such cases came from "out in the county", there is an obvious possibility for prejudice against the municipality.
No doubt a verdict adverse to the City of Bay St. Louis would have had a slight adverse financial impact upon every taxpayer of the City  the extent of which would depend upon the amount of the judgment and the type of tax levied. No doubt some of the jurors knew that. The same can be said for jurors in any negligence action, for all presumably carry liability insurance and many are aware that the size of jury verdicts does indeed have an impact upon premiums paid for liability insurance. Recognizing that Plaintiff's point is not without force, we regard that the interest of such prospective jurors is sufficiently remote that it is overcome by the desirability of having cases heard and decided by juries drawn from a fair cross section of the county in which the case is heard. The assignment of error is denied.
Having said this, we are nevertheless greatly troubled by the newspaper article which appeared eight days before trial. It is difficult to perceive any reason for the timing of the release to the press of the status of the special sales tax levied to pay off a prior judgment against the City except to influence the outcome of the case at bar. While we do not reverse because of this, we candidly state that, as we approach the final assignment of error, our thinking is colored against the City.

VI.
Defendant requested and obtained Jury Instruction D-5 which can only be read as informing the jury that contributory negligence is a bar to recovery by Plaintiff. That instruction reads:
The Court instructs the jury if you believe from the evidence in this case, if any, that the location and condition of the sidewalks complained of were open and obvious to anyone using reasonable or ordinary care for their own personal safety, then and in that event, the plaintiff is charged with knowledge of the condition of the sidewalks, and in using the sidewalks, she is charged with using that degree of care commensurate with the condition of the sidewalks which are open and obvious provided you believe from the evidence in this case, if any, that the location and condition of the sidewalks were open and obvious, and if you believe from the evidence in this case, if any, the plaintiff failed to use reasonable or ordinary care for her own personal safety in seeing what she should have seen or by the exercise of reasonable or ordinary care should have seen, then it shall be your sworn duty to return a verdict for the defendant.
We have considered carefully the City's argument that this instruction correctly states the law on the theory that, if the debris or grass on the sidewalk was open and obvious, then as a matter of law the sole proximate cause of the accident must *664 have been Bell's negligence. We regard the argument as flawed.
First, conditions are not either open and obvious or not open and obvious. Common sense and experience negates an either/or categorization of such conditions. Just how open and obvious a condition may have been is a question for the jury in all except the clearest cases. Lancaster v. City of Clarksdale, 339 So.2d 1359, 1360 (Miss. 1976); Wilson v. Kirkwood, 221 So.2d 79, 81 (Miss. 1969).
More fundamentally, the rule for which the City argues would exonerate it no matter how negligent the City may have been and no matter how "active" that negligence may have been at the time. We might as well exonerate as a matter of law a defendant who leaves his car parked in the middle of the street on grounds that the car was open and obvious. In prior cases involving hazards that were extremely "open and obvious", this Court has not barred injured parties from recovery, but rather has left the issue to the jury properly instructed regarding comparative negligence. See Lancaster, 339 So.2d at 1360 (traffic control box 5 feet above, and protruding 30 inches over, 5 or 6 foot wide sidewalk caused compensable injury); Wilson, 221 So.2d at 80-81 (weighing scale 6 inches high and 27 inches wide caused potentially compensable injury). Where a defendant negligently creates an unreasonably unsafe condition in an area where the plaintiff has every right to be, that defendant may not escape liability by arguing that the condition was open and obvious.
It requires little citation of authority to establish that Mississippi is one of the oldest and most trenchant of comparative negligence states. Miss. Code Ann. § 11-7-15 (1972). Under our familiar rule, contributory negligence diminishes but does not bar a plaintiff's recovery.[5]
We have repeatedly condemned jury instructions which, if followed by the jury, would completely deny a negligent plaintiff recovery, even though the defendant may also be negligent. Bozeman v. Tucker, 203 So.2d 795, 799 (Miss. 1967); Hogan v. Cunningham, 252 Miss. 216, 223-224, 172 So.2d 408, 411 (1965). Yet, in the proceeding below, the City requested and the trial judge granted an instruction which in pertinent part tells the jury that it should find for the City if it believed from the evidence in the case that
The plaintiff failed to use reasonable or ordinary care for her own personal safety in seeing what she should have seen or by the exercise of reasonable or ordinary care should have seen, ...
To have been correct, the instruction should have further included words to the effect that
... and if you further find that such failure, if any, on the part of plaintiff was the sole proximate cause of the accident in question... .
This failure to so restrict the instruction is fatal. We have reviewed the other instructions in the case, and find that the error is not cured. Wilburn v. Gordon, 209 Miss. 27, 50, 45 So.2d 844, 847 (1950).
We hold that the trial judge committed error when he granted jury instruction No. D-5.[6] Because no other instruction *665 advised the jury that it could return a verdict for Plaintiff Bell, even though it considered that she was negligent to some extent, the error is of reversible proportions. Accordingly, the judgment below for Defendant, City of Bay St. Louis, is vacated and reversed and this matter is remanded to the Circuit Court of Hancock County for a new trial on all issues, not inconsistent with this opinion.
REVERSED AND REMANDED FOR A NEW TRIAL.
PATTERSON, C.J., DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
ROY NOBLE LEE, P.J., concurs except to question VI and result.
WALKER, P.J., and HAWKINS and ANDERSON, JJ., do not join.
HAWKINS, Justice, dissenting:
I respectfully dissent.
In doing so, I reject the majority's assumption any circuit judge of this state is so bereft of intelligence to grant an instruction that contributory negligence bars recovery. And, most assuredly not the gentleman who presided over the trial of this case.
Rather, I view the majority has misread the instruction and failed to consider it along with the others granted.
First, the law.
A property owner is not liable for any stationary hazard or danger on his property which is open and obvious to the whole world. Such hazard is not going to reach out and grab the customer, or swing around and hit him.
To the contrary, the customer must simply ignore the obvious and take some overt action in order to hurt himself.
A tub is in a store aisle to catch a leak. The customer with ordinary eyesight is not barred from recovery for stepping into the tub and falling down, because he is contributorily negligent. He is barred from recovery because the hazard is wide open to see. Same principle for a trash barrel sitting in the middle of an aisle.
The negligence of a property owner consists, not in creating some impediment to traffic, but in creating some impediment that is not fully obvious. Then, it becomes a hazard. It is the concealed, the non-apparent, the deceptive impediment for which liability is imposed.
Contributory negligence does not come into play in such situations; instead, the question is whether there is any liability at all.
Thus, in Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss. 1967), p. 476, we stated:
The owner of a business is not an insurer of the customers using the parking lot and sidewalks, and is not liable for the injuries caused by conditions which are not dangerous or which are or should be known or obvious to the customer. [Emphasis added]
In this case the dear lady tripped over a curb from the street to the sidewalk.
Also, in The General Tire and Rubber Company v. Darnell, 221 So.2d 104 (Miss. 1969), p. 107, we stated:
... The invitee is required to use in the interest of his own safety that degree of care and prudence which a person of ordinary intelligence would exercise under the same or similar circumstances.
* * * * * *

*666 Likewise, in the usual case, there is no obligation to protect the invitee against dangers which are known to him or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself.
Again in King v. Dudley, 286 So.2d 814 (Miss. 1973), p. 816, we stated:
The owner of a business is not the insurer of invitees using his premises for business reasons, and there is no liability for injuries caused by conditions which are not dangerous or which should be known by the invitee. [Emphasis added]
In my view, Instruction D-5 simply embodies the above principle of law. Now, anybody unaware of this principle so well settled by decisions of this Court, as well as other states, could very well think the instruction was talking about contributory negligence.
But, if you accept the above principle of law, what's wrong with D-5?
The Court instructs the jury if you believe from the evidence in this case, if any, that the location and condition of the sidewalks complained of were open and obvious to anyone using reasonable or ordinary care for their own personal safety, then and in that event, the plaintiff is charged with knowledge of the condition of the sidewalks, and in using the sidewalks, she is charged with using that degree of care commensurate with the condition of the sidewalks which are open and obvious provided you believe from the evidence in this case, if any, that the location and condition of the sidewalks were open and obvious, and if you believe from the evidence in this case, if any, the plaintiff failed to use reasonable or ordinary care for her own personal safety in seeing what she should have seen or by the exercise of reasonable or ordinary care should have seen, then it shall be your sworn duty to return a verdict for the defendant.
Therefore, I would affirm.[1]
WALKER and ROY NOBLE LEE, P.JJ., and ANDERSON, J., join this opinion.
NOTES
[1] The Circuit Court of Hancock County holds four terms a year  January, April, July and October. Miss. Code Ann. § 9-7-9 (Supp. 1980).
[2] Default proceedings are now governed by Rule 55, Miss.R.Civ.P. Obviously, today's opinion should not be regarded as an authoritative exposition of that rule.
[3] See Warner v. City of Bay St. Louis, 552 F.2d 583 (5th Cir.1977).
[4] See Ducomb, "Bay to eliminate one-half cent tax", Sea Coast Echo, at 6A (January 3, 1982).
[5] See generally Mitchell v. Craft, 211 So.2d 509, 513 (Miss. 1968); Shell, et al, Comparative Negligence In Mississippi, 27 Miss. L.J. 105 (1956); Note Effect of Mississippi's Comparative Negligence Statute on Other Rules of Law, 39 Miss. L.J. 493 (1967).
[6] The cases said to support the City's position that the instruction correctly states the law are wholly distinguishable. Both General Tire & Rubber Co. v. Darnell, 221 So.2d 104 (Miss. 1969) and Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473 (Miss. 1967) involve cases where the owner of a business premises undisputedly was not negligent. In Darnell, an installer was injured by the doors of an elevator which was not shown to be defective in any manner whatsoever. 221 So.2d at 107. In Stanley, a shopper fell from a curb about which no complaint of defect or unsafe condition existed. 203 So.2d at 475. These were cases where the owner of a business premises could only be liable if he were an insurer.

In terms of Bell's situation, if she had slipped on a sidewalk that was clean and free of debris, then her case would fail. Bell's actual situation is perhaps more aptly illustrated by the remaining case cited to support the City's position: King v. Dudley, 286 So.2d 814 (Miss. 1973). A customer in a pulpwood yard walked under a 7,000 pound load of logs held aloft by a defective hoist. The logs fell and killed the customer. The trial court had directed a verdict for the defendant pulpwood yard presumably because the hazard was so "open and obvious". This Court reversed. We held that because there was clearly negligence by both parties, the responsibility for the death posed a question to be resolved by a jury correctly instructed on comparative negligence. 286 So.2d at 816-17.
As there was clearly testimony regarding affirmative acts of negligence committed by the City, the trial judge should not have granted Instruction No. D-5.
[1] A reading of all the instructions given in this case reveals the jury was indeed fully and adequately instructed, and there should be no misunderstanding.

Moreover, the majority fails to note that the defendant requested a proper contributory negligence instruction which would have cleared all the majority's misgivings, D-11, R. 296, but the circuit judge on objection by the plaintiff removed any instruction pertaining to contributory negligence, because it had not been pleaded. R. 229.