# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-01166-SCT

*DEVINEY CONSTRUCTION COMPANY, INC.*

*v.*

*DAVID SCOTT MARBLE*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/11/2009 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JUSTIN J. PETERSON |
| | W. WAYNE DRINKWATER, JR. |
| | W. HUGH GILLON, IV |
| ATTORNEYS FOR APPELLEE: | J. ASHLEY OGDEN |
| | JAMES W. SMITH, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 05/12/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Time Warner[1] employee David Scott Marble was injured when he touched a live

electrical wire while attempting to splice a new cable into an old cable.  He brought suit

against Deviney Construction Company, Inc., alleging that Deviney negligently had dug up

the electrical wire and then had failed to secure it.  After a trial, the jury found in favor of

Marble and awarded him $2.5 million.  Deviney appeals, arguing, among other things, that

_____

[1] Time Warner is now Comcast Cable.

the trial judge's ruling on the presentation of witnesses constitutes reversible error. We agree with Deviney and reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶2. In June 2005, a road-widening project was underway on County Line Road in Jackson/Ridgeland, which required installation of new cable. Time Warner had bored the new cable underneath County Line Road and had dug a hole on the property of an adjacent apartment complex so that the new cable could be spliced into the old cable. But while digging the hole to expose the cable, Time Warner had accidentally cut a BellSouth phone line. On June 22, BellSouth called Deviney to the scene to widen the hole with a backhoe so it could repair its line. Deviney employees arrived on the scene around 10 or 11 a.m. and worked for three to four hours. While digging, Deviney accidentally cut[2] an electrical wire. Deviney employee Brian Odom testified that he accidentally touched the wire and, when he did not get shocked, he "assumed it was dead." But it was later discovered that the wire supplied power to outside lighting at the apartment complex, which was energized at night according to a timer.

¶3. Odom testified that he did not test the wire with a voltage meter. Odom or his coworker notified the manager of the apartment complex that he thought they had hit a wire. The complex's maintenance worker came and looked at the wire, but "didn't know nothing

---

[2] It is unclear whether Deviney actually cut the wire, or whether it simply uncovered a wire that already had been cut. But Deviney does not dispute that it was the first party to discover the cut wire.

about nothing." Odom testified that he thought he had covered both ends of the exposed wire with PVC pipe.[3] But he did not cap, tape, or mark the wire as energized.

¶4. Marble and his coworker Vic Hollifield worked the midnight shift for Time Warner. They arrived at the scene during the early morning hours of June 23 to splice the new cable into the old cable. Hollifield testified that Marble stepped into the hole and "kind of stayed there a few seconds." Then, Hollifield testified that "all of a sudden he just – it was just like somebody had dropped a bag of rocks or just dead weight and landed in here when he fell." Hollifield testified that he thought Marble had just slipped at first, but then he heard him say something about being shocked. Hollifield got down in the hole with Marble and "let him get his consciousness back together," and Marble kept saying that he had been shocked and that his whole body was numb.

¶5. After he got Marble out of the hole, Hollifield spotted the wire that had shocked him. Hollifield testified that it was hard to see, because it "just kind of blended in with the roots." He sat with Marble for about forty-five minutes more and called their supervisor, who told him to take Marble to the hospital. Marble was treated and released from the hospital that night. After some physical therapy, he returned to work in August of 2005. He worked a great deal of overtime during the post-Katrina cleanup efforts, but began having significant neck pain in October 2005. He continued to work off and on until December 2005. Marble testified that he can no longer work, and that he is positive that the accident caused all of his

---

[3] Although Odom testified that he thought he had covered the exposed wire with PVC pipe, none of the pictures taken at the scene the next morning reveal any PVC pipe.

current medical problems.[4] He said he takes twenty-three prescription pills daily, as well as several over-the-counter pain relievers.

¶6. Before trial, the judge ruled that the witnesses could be called only once to the witness stand. Counsel for Deviney objected to this ruling, expressing his view that the defense should not be "handcuffed," but should be allowed to call its witnesses in its own case-in-chief. Marble ultimately called fourteen witnesses in his case-in-chief, including two of Deviney's fact witnesses as adverse witnesses. During trial, counsel for Deviney renewed his objection to the trial judge's ruling, but the trial judge affirmed her earlier ruling.

¶7. The jury heard testimony that Marble's medical treatment had cost $111,476.52 from the date of the accident through the date of trial. They heard testimony that, assuming his current prescription plan, he would incur $690,212.66 in pharmaceutical bills during the remainder of his life. The jury also heard testimony that his estimated lost wages ranged from $1,714,685 if he retired at age sixty-five, to $2,653,164 if he retired at age seventy-eight. The jury ultimately found that Deviney was 100 percent at fault and returned a $2.5 million verdict for Marble. Deviney filed a motion for judgment not withstanding the verdict (JNOV), or in the alternative, for a new trial, or in the alternative, for remittitur, which the trial judge denied.

¶8. Deviney appeals to this Court, asserting five points of error:

> I. The trial judge reversibly erred in admitting the unsupported, unreliable and untimely disclosed testimony of Marble's economist, Dr. Glenda Glover;
>
> II. The trial judge's ruling on order of proof constituted reversible error;

---

[4] Marble testified that he suffers from significant neck and back pain, numbness and tingling in his arms, feet and toes, and weakness in his left arm.

III.  The trial judge reversibly erred in preventing the jury from considering and apportioning fault to Time Warner and BellSouth;

IV.  The trial judge reversibly erred in preventing the impeachment of Marble's false testimony through evidence of collateral-source payments; and

V.  The trial judge's multiple errors mandate a new trial under the cumulative error doctrine.

¶9.  We find Issue II dispositive and decline to address the remaining issues.

**ANALYSIS**

¶10.  As mentioned above, the judge ruled before trial that witnesses could be called only once to the stand.  Counsel for Deviney objected, expressing concern that this ruling would "handcuff" the defense.  The complete exchange was as follows:

> **Counsel for Marble:** I want to clear one more thing with you, Judge, if you don't mind.  I would like to put the plaintiff on specifically only for the issue of liability and then bring him back at another time to discuss the damages because of the way I've structured my case.
>
> **Court:** No, sir.  Why would you want to do that, have him on there two times before a jury?
>
> **Counsel for Marble**: Well, because the liability issue is a lot shorter than the damages.  The damages I'm assuming might take all day with cross.
>
> **Court:** That will come all at one time.  We're not going to have witnesses split back and forth.  It just doesn't make much sense.  I'm not going to give him a second time to be before the jury.  Just one time.  And however long it takes, we'll go with it.
>
> **Counsel for Marble:** Okay. [Defense Counsel] I think was wanting to reserve his cross, or you're going to reserve your questioning?
>
> **Court:** No.  We're going to have people on at one time.  Yes, sir?

5

**Counsel for Deviney:** And that may go to what I'm fixing to ask. Other lawyers in my office who have tried cases in front of you more recently than I have has [sic] said that when their clients have been called adversely, they've asked to reserve to put them on in their case in chief.

**Court:** A second.

**Counsel for Deviney:** And you've ordered that you could do so.

**Court:** Basically my ruling has been that if they're on the stand and you want them on direct, you can take them on direct in your cross, or you can do your cross and then have them on direct. But, again, we don't have witnesses back and forth on the stand more than once because that puts you in the same situation as [Counsel for Marble]. You've got a witness, you put on the stand before the jury, and then they sit down, and then you get a second shot at him. Go on and you should go into your direct. So you can do your direct and cross at the same time. And [Counsel for Marble] can then come and do his cross, and then I'll come back to you. So, you'll get the chance in terms of when you would have put him on direct, then for his cross, then back to you for your redirect, but you need to do that when you put them on.

**Counsel for Deviney:** And that's your ruling?

**Court:** Yes, sir.

**Counsel for Deviney:** And for the record can I just say my concern about that? I just want to make the record clear.

**Court:** No problem putting it on there.

**Counsel for Deviney:** My concern about that is if they're called in [Marble's] case in chief, that's a choice that he made, not that I made.

**Court:** Yes, sir.

**Counsel for Deviney:** And he theoretically could call all of my witnesses adversely and leave me with no witnesses to call in my case in chief. And if he chooses to call them in his case [in] chief, it would be my position in all respect to your ruling that we should –

**Court:** I always give an instruction with it and whatever instruction [sic]. So it's not like the jury goes without any direction in that regard, but go on.

6

**Counsel for Deviney:** But we would argue that the defense shouldn't be handcuffed to have to go ahead and take the direct of their witnesses at that time. They should be allowed the right to reserve and take their witnesses in their case in chief. But I understand your ruling and will respect it.

**Court:** Thank you. The Court will generally give an instruction to the jury. You can draft that instruction and provide it to me, but I generally will instruct the jury that they are – you're about to do the witness on direct; that you would have called that witness in support of your particular case. But in order to be efficient with this situation, we're basically requiring you to go forward with your direct so that they are assured that they consider both as to his cross-examination and your direct.

**Counsel for Deviney:** Thank you, Your Honor.

**Court:** But your objection is noted.

¶11.  During trial, after counsel for Marble had finished questioning Deviney employee Brian Odom adversely during his case-in-chief, counsel for Deviney renewed his objection:

**Court:** Cross-examination? Are you going to do direct on him as well, or were you planning to call him –

**Counsel for Deviney:** Your Honor, I was planning to call him in my case in chief. And I ordinarily would or I would prefer to reserve my questions until my case in chief, but it's my understanding that if I do not take him now, I waive my right to call him in my case in chief; is that correct?

**Court:** Are you talking in front of the jury about something you and I discussed?

**Counsel for Deviney:** Well, I'm sorry.

**Court:** Okay.

**Counsel for Deviney:** I was trying to make sure I got a record of what I'm doing. And I don't know that it makes a difference with the jury. And I'll approach the bench on it.

**Court:** I don't think you have a question about my ruling, Counsel.

7

**Counsel for Deviney:** No ma'am. I'm just trying to make a record. I'm trying to –

**Court:** I asked you were you going to take him on direct. I do not allow witnesses a second time to take the stand. Are you going to take him on direct?

**Counsel for Deviney:** Yes ma'am.

The trial judge then proceeded to instruct the jury, in pertinent part:

As you recall, I told you plaintiff went first and then defendant goes. Now, we could let this witness testify and bring him back a second time when the defendants get ready for their case in chief. It is my policy and my option as a judge to require that the defendant move forward and take the witness that he would have had in chief on direct at a time outside of where he normally would. That saves the Court time, and it saves the parties time. Mr. Odom is now to be considered a witness for the defendant, so his testimony is to be perceived just as if he were called in chief on behalf of the defendant and will be cross-examined by the plaintiff.

Counsel for Marble also called Deviney's corporate representative as an adverse witness during his case-in-chief, and counsel for Deviney requested that the trial judge again instruct the jury of the procedure being followed.

¶12. On appeal, Deviney argues that the trial judge's ruling on the presentation of witnesses was reversible error. It points out that it was forced to conduct its examination of its only fact witnesses *during Marble's case-in-chief*. It argues that the trial judge's ruling was fundamentally unfair, as it was "forced to examine its fact witnesses and corporate representative – i.e., the only witnesses that could explain [its] actions – without having heard the testimony of the eight plaintiff's witnesses that followed." Marble argues that the trial judge's ruling was within the discretion allowed her under Mississippi Rule of Evidence 611(a).

¶13.     Mississippi Rule of Evidence 611(a) addresses the order of interrogation and states:

> (a) Control by Court. The court shall exercise *reasonable* control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Miss. R. Evid. 611(a) (emphasis added).  But, as this Court pointed out in **Bell v. City of Bay St. Louis**, 467 So. 2d 657, 661 (Miss. 1985), simply because a matter is left within the discretion of the trial judge does not mean "that the trial judge [can] do anything he or she [wishes]." "Sound discretion imports a decision by reference to legally valid standards." **Id.** "Where a trial judge in determining a matter committed to his sound discretion makes his decision by reference to an erroneous view of the law, this Court has authority to take appropriate corrective action on appeal." **Id.**  But "[n]o trial is free of error," and to require reversal "the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced." **Busick v. St. John**, 856 So. 2d 304, 308 (Miss. 2003).

¶14.     It is a fundamental tenet that a plaintiff in a civil suit has the initial burden of production (i.e., he must introduce evidence sufficient to establish each element of the claim asserted) before the defendant must present its case.  The trial judge's ruling violated this basic principle, as she forced Deviney to present evidence by questioning two of its defense witnesses before Marble had finished presenting his case.  Deviney was forced to speculate as to what evidence Marble's later witnesses would present and try to address that evidence during Marble's case-in-chief.  And Deviney was unable to recall its two fact witnesses to rebut any of the testimony offered by the *eight* plaintiff's witnesses that followed.  While we agree that a court has broad discretion under Rule 611(a) to manage the pace of a trial by

9

placing "reasonable" limits on the "mode and order of interrogating witnesses and presenting evidence[,]" it must do so without unduly interfering with the presentation of either party's case. Miss. R. Evid. 611(a). Our trial courts must recognize a litigant's broad discretion as a matter of trial strategy to offer evidence in a manner that will most effectively present its case. A defendant should not be required to present his or her evidence during the plaintiff's case. We find this error to be of such "magnitude" that it did in fact "unduly prejudice" Deviney, and we therefore reverse and remand for a new trial.

## CONCLUSION

¶15.    Because we find the trial judge's ruling to be an unreasonable and unrestrained exercise of her discretion which affected Deviney's ability to present its defense, we reverse and remand for a new trial. And because this issue is dispositive, we decline to address the remaining issues.

¶16.    **REVERSED AND REMANDED.**

**CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. WALLER, C.J., NOT PARTICIPATING.**