THOMAS, J., for the Court:
¶ 1. Jore King appeals the decision of the Harrison County Circuit Court, raising the following issues as error:
I. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT JNOY AND/OR MOTION FOR NEW TRIAL WHEN THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
II. WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANT’S COMPARATIVE NEGLIGENCE INSTRUCTION (INSTRUCTION No. D^)?
III. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO SEND THE JURY INSTRUCTIONS WITH THE JURY TO THE JURY ROOM?
¶ 2. Finding error, we reverse and remand for a new trial. Because the second issue is dispositive, we will not address the first and third issue.
FACTS
¶ 3. On November 20, 1991, The Kroger Co. operated a supermarket on Pass Road in Gulfport, Mississippi. Ms. Jore King, a resident of Gulfport, was driving home with her friend and co-worker Ms. Queen Elizabeth Graves. While on their way home from work that day, King and Graves decided to stop at the Kroger store to purchase a few grocery items. The two proceeded to the produce section to get tomatoes and a few other items. King went to get a plastic produce bag for tomatoes, and as she turned to head back to the grocery cart, her feet slipped out from under her and she fell on the floor.
*679 ¶ 4. As King was falling, she attempted to catch herself with her right hand. King hit her hand and lower part of her right back on the floor. King testified at the trial that wrhen she got up after her fall, the floor appeared damp, and she saw what appeared to her to be marks on the floor from a mop. Graves, who was standing a few feet away from King, came to assist her Mend. Another woman, Ms. Gayle Lang, also came over to offer assistance. Neither King, Graves, nor Lang recalled seeing anyone other than King, Graves, and Lang in the area where the fall took place. King went on to testify that after she got up from the fall she saw a man outside of the produce section near the rear of the store carrying a mop. However, neither Graves nor Lang saw anyone with a mop. King and Graves both stated that they noticed a wet spot on King’s clothes, but no “wet floor” signs were visible.
¶ 5. After the fall King continued to shop. While shopping, King started to experience more pain and decided that she should report the incident to a store employee. Once King had checked out, she went to the manager’s counter and reported the fall to Mr. John Jones, the assistant manager on duty. Mr. Jones prepared a written report of the incident based upon his interview of King and his inspection of the site where she claimed to have fallen. Included in the report was the condition of the floor as observed by him and the identity of witnesses to the fall. Gayle Lang was the only name listed on the report as a witness, and Graves was not identified as a witness by Jones nor did she speak to Jones at the time. After Jones interviewed King, she showed him the location where she had fallen, and Jones inspected the floor and put his findings in the written incident report. Jones noted a scuff mark on the floor, but otherwise found the floor to be dry at the place where King said she had fallen. Jones did note some drops of water on the floor, but they were a short distance away from the fall site. Jones made no notes that would lead one to believe the floor had just been mopped.
¶ 6. King returned to her home, and later that night she began experiencing discomfort due to a swollen hand and pain in her back. King went to the emergency room at Memorial Hospital in Gulfport, and at this time King advised the medical personnel in the hospital that she had slipped and fallen on her back. King returned to Gulfport Memorial Hospital on December 6, 1991, several weeks after the incident with similar complaints. In December of 1991, King was still experiencing pain in her shoulder and swelling in her arm. King went to see the family physician Dr. Dunn, who in turn referred her to Dr. Thomas Hewes in Gulfport. Dr. Hewes treated King for injuries to the right wrist and administered cortisone injections to her arm. King was then sent to Tulane Medical Center in New Orleans, and Dr. Ollie Edmunds performed nerve test and x-rays on King’s arm. However, Dr. Edmunds did not diagnose the injuries. King then went to see Dr. Chris Wiggins in Pascagoula, who in turn referred her to Dr. Terry Millette. At the time of the trial, King was continuing treatment with Dr. Terry Millette.
¶ 7. King brought a claim against Kroger alleging negligence and failure to warn a business invitee of a dangerous condition. The first trial in this matter was held in January of 1999, and the jury was unable to reach a verdict; therefore, the trial judge declared a mistrial. King and Kroger then agreed to have the matter heard in the Second Judicial District, and a second trial took place in Biloxi on July 27, 1999. A final judgment in favor of Kroger was entered in the Circuit Court of Harrison County, Mississippi. King filed a mo *680 tion for a judgment notwithstanding the verdict and for a new trial. The trial court judge denied King’s motion. It is from this denial that King now appeals.
ANALYSIS
II.
WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANT’S COMPARATIVE NEGLIGENCE INSTRUCTION (INSTRUCTION No. D-4)?
¶ 8. Kroger requested and obtained Jury Instruction D^i which can only be read as informing the jury that an open and obvious defense existed in a comparative negligence instruction. That instruction reads:
The Court instructs the Jury that while shopping at Kroger Store V379, Jore King had a duty to exercise reasonable care to observe any hazard or risks on the floor in the produce department which could cause injury to her and which were readily apparent and if you believe from a preponderance of the evidence in this case that Jore King failed to do so, then she was guilty of negligence.
If you further believe from a preponderance of the evidence in this case that the negligence, if any of Jore King was a contributing proximate cause of the injuries and damages, if any, suffered by her when she fell, then you shall reduce any damages you award Jore King, if any, by the proportion or amount her negligence contributed to her injuries. However, if you believe by a preponderance of the evidence in this case that the negligence of Jore King, if any, was the sole proximate cause of her injury then you shall return a verdict for the Defendant, The Kroger Company.
King states that the trial court should not have given this instruction because it is an incorrect statement of the law, due to the fact that this instruction provides an open and obvious defense. Also, the sentence “However, if you believe by a preponderance of the evidence in this case that the negligence of Jore King, if any, was the sole proximate cause of her injury than you shall return a verdict for the Defendant” could have been confusing to the jury and conceivably perceived as contributory negligence which would bar recovery by King. We have considered carefully Kroger’s argument that the instruction correctly states the law on the theory that if the mopped or wet floor was readily apparent, then as a matter of law the sole proximate cause of the accident must have been King’s negligence. We hold the argument to be flawed.
¶ 9. Our Mississippi Supreme Court sets forth the premise that there may be more than one proximate cause to a negligent act. See King v. Dudley, 286 So.2d 814, 817 (Miss.1973); Braswell v. Economy Supply Co., 281 So.2d 669, 676 (Miss.1973). The defendant may be negligent, but so too may be the plaintiff. Thus, our comparative law applies. The “open and obvious” standard is simply a comparative negligence defense used to compare the negligence of the plaintiff to the negligence of the defendant. If the defendant was not negligent, it makes no difference if the dangerous condition was open and obvious to the plaintiff since the plaintiff must prove some negligence on part of the defendant before recovery may be had. On the other hand, if the defendant and the plaintiff were both at fault in causing or attributing to the harm, then damages can be determined through the comparative negligence of both. In Bell v. City of Bay St. Louis, 467 So.2d 657, 663 (Miss.1985), the Mississippi Supreme Court states that where a defendant negligently creates an unreasonably unsafe con *681 dition in an area where the plaintiff has every right to be, that defendant may not escape liability by arguing that the condition was open and obvious. Our Supreme Court has held that the so called “open and obvious” defense is no longer an absolute bar to recovery, and to now apply our true comparative negligence doctrine. Tharp v. Bunge Corp., 641 So.2d 20, 25 (Miss.1994).
¶ 10. In giving Jury Instruction D-4, the trial court erred, since there was not a single instance of negligence on the part of King which could have supported a comparative negligence finding by the jury other than the fact that King should have apparently recognized the mopped floor. This evidence would support the “open and obvious” defense, which is no longer applicable in our comparative negligence doctrine. Finding error, we reverse and remand.
¶11. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.
KING, P.J., PAYNE, BRIDGES, LEE, IRVING, and MYERS, JJ., concur.
SOUTHWICK, P.J., dissents with separate written opinion joined by McMILLIN, C.J., and CHANDLER, J.